**AKRON CENTER FOR REPRODUC-
TIVE HEALTH, et al., Plaintiffs,**

v.

**Gary M. ROSEN, as Police Prosecutor for
the City of Akron and as representing
all other police prosecutors in Ohio, et
al., Defendants.**

Civ. A. No. C 86–1099 A.

United States District Court,
N.D. Ohio, E.D.

April 22, 1986.

Linda R. Sogg, Cleveland, Ohio, Bruce Campbell, A.C.L.U. of Ohio Foundation, Inc., Columbus, Ohio, Roger K. Evans, Planned Parenthood Federation of America, Inc., New York City, for plaintiffs.

David J. Kovach, Asst. Atty. Gen., Cleveland, Ohio, Lynn Slaby, Pros. Atty., Larry Poulos, Asst. Pros. Atty., Patricia C. Ambrose, Asst. Dir. of Law, Akron, Ohio, for defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

This action was filed on March 21, 1986 by plaintiffs challenging the constitutionality of Amended Substitute House Bill Number 319 ("H.B. 319"), which requires that a physician who intends to induce an abortion on an unmarried, unemancipated woman under the age of eighteen must notify her parents, unless one of several exceptions, including a waiver by a juvenile court, is present. The complaint seeks a declaratory judgment that H.B. 319 is unconstitutional on its face, and prays for injunctive relief against its enforcement.

On March 31, 1986, this Court granted plaintiffs' motion for a ten-day temporary restraining order, which was extended for an additional ten days for good cause shown until April 20, 1986. Extensive briefs have been filed, and by agreement of all the parties, a consolidated hearing on the preliminary injunction and on the merits pursuant to Fed.R.Civ.P. 65(b)(2) was held on April 21, 1986, at which argument was heard.

For the reasons set forth below, the Court holds that H.B. 319 violates the due process clause of the fourteenth amendment to the Constitution and that defendants Rosen and Slaby are enjoined from enforcing it. No motions for class certifications having been pursued, no classes are certified. Defendants Celeste and Celebrezze are dismissed, as is plaintiff Poe. The following opinion contains findings of fact and conclusions of law as required by Fed.R.Civ.P. 52(a).

Jurisdiction is proper pursuant to 28 U.S.C. §§ 1331, 1343(a)(3) and (4) (1982). Declaratory judgment relief is authorized by 28 U.S.C. §§ 2201 and 2202 (1982).

## FINDINGS OF FACT

I.

A. *H.B. 319*

H.B. 319 was passed on November 20, 1985, and became law without the governor's signature. The act was to become effective on March 24, 1986. Ohio Rev. Code Ann. § 2919.12 (Page Supp.1985) ("§ 2919.12") provides that "[n]o person shall knowingly perform or induce an abortion upon a woman who is pregnant, unmarried, under eighteen years of age, and unemancipated" unless one of five exceptions applies. Subsection (B)(1)(a) provides that an abortion can proceed after the physician has given twenty-four hours actual notice of the pending abortion to one of the minor woman's parents, guardian or custodian.[1] In certain cases where the minor woman fears physical, sexual or severe emotional abuse if her parents are notified, a specified relative can be notified instead of her parents upon the filing with a juvenile court of affidavits by the minor and her relative. § 2919.12(B)(1)(b). Notification is not required if one of the woman's parents has consented in writing to the performance of the abortion. § 2919.-12(B)(1)(a)(ii). If a parent cannot be reached for actual notification after reason-

---

**1.** Hereinafter, the Court will use the word "parent" to refer to any person the physician is permitted by law to notify under H.B. 319 in order to avoid liability.

able effort, constructive notice by ordinary and certified mail forty-eight hours before a procedure is performed is adequate. § 2919.12(c)(2).

A minor who objects to notification may file an action in juvenile court for the waiver of notification. Ohio Rev.Code Ann. § 2151.85 (Page Supp.1985) ("§ 2151.85"). She begins the action by filing a complaint containing one or both of the following allegations: 1) that she is mature enough to decide to have an abortion without parental notification; 2) that one or both of her parents has engaged in a pattern of physical, sexual, or emotional abuse against her or that notification is otherwise not in her best interests. § 2151.85(A)(4). The court is then required to appoint counsel for the complainant, hear the case within five business days, and immediately decide the case at the end of the hearing. § 2151.85(B)(1), (B)(2), and (C). If the court finds against the minor and dismisses the complaint, it must immediately notify the woman of her right to appeal the decision under Ohio Rev.Code Ann. § 2505.073 (Page Supp.1985) ("§ 2505.073").

A physician is not required to notify a minor's parents before performing an abortion if a waiver is authorized by the court. § 2919.12(B)(1)(iii). The doctor may also proceed without notification after five days have elapsed from the docketing of the complaint before the juvenile or the appellate court, without a judgment entry by that court. § 2919.12(B)(1)(iv).

A physician who violates § 2919.12 is guilty of a misdemeanor of the first degree for his or her first offense, and of a felony of the fourth degree if he or she has previously been convicted or pleaded guilty to a violation of this section. § 2919.12(D). The physician may also be liable for civil compensatory and punitive damages to the minor and her parents. § 2919.12(E). Finally, a doctor violating § 2919.12 may have his or her certificate to practice medicine limited, revoked or suspended, or may be subject to reprimand and probation. Ohio Rev.Code Ann. § 4731.22 (Page Supp. 1985) ("§ 4731.22"). However, the physi-

cian can assert the affirmative defenses that he or she was misled regarding the age, marital status, or emancipation of the child, or that the notification was impossible because of an immediate threat of serious risk to the minor's life or physical health by an emergency requiring the immediate performance of an abortion. § 2919.12(C).

## B. *The Parties*

Plaintiff The Akron Center for Reproductive Health ("Akron Center") operates a free-standing medical facility in Summit County, Ohio, offering birth control, pregnancy and abortion services to patients including unmarried, unemancipated women under the age of eighteen. The Akron Center alleges that it, its agents or its employees could be subjected to civil and criminal liability under H.B. 319.

Plaintiff Max Pierre Gaujean, M.D., is a physician who performs abortions at the Akron Center. He alleges that he will be subjected by H.B. 319 to criminal and civil penalties and possible impairment of his ability to practice medicine in the state of Ohio. Both Dr. Gaujean and the Akron Center sue on behalf of their minor patients as well as on their own behalf.

Plaintiff Patty Poe is an unmarried minor living with her parents in Summit County who is sexually active and believes that she may be pregnant. She alleges that she is mature and that notification to her parents of her pregnancy would cause her emotional harm and force her to continue her pregnancy.

Plaintiff Rachel Roe is an unmarried minor living in the home of one of her parents with her two-year old child. She alleges that she is mature and that she has been subjected to physical abuse in her home. Roe has been refused an abortion at the Akron Center because of the imminent operation of H.B. 319.

Defendant Gary M. Rosen is the City Prosecutor for the City of Akron, Ohio. Defendant Lynn Slaby is the Prosecuting Attorney of Summit County, Ohio. Plain-

tiffs allege that Rosen is responsible for prosecuting misdemeanors and Slaby for prosecuting felonies arising under § 2919.-12. Defendant Anthony Celebrezze is the Attorney General of the state of Ohio, and defendant Richard F. Celeste is the Ohio governor. All defendants are sued in their official capacities. Plaintiffs also sue Rosen and Slaby as representatives of all Ohio prosecutors charged with prosecuting violations of § 2919.12, and plaintiffs Poe and Roe also seek to represent the entire class of unmarried, unemancipated minor women in Ohio who are or may become pregnant. However, plaintiffs have not filed a motion to certify either plaintiff or defendant classes.

## CONCLUSIONS OF LAW

### II.

#### A. *Standing of the Plaintiffs*

Present case law indisputably supports the standing of the Akron Center and Dr. Gaujean to assert the due process rights of their patients. *Birth Control Centers, Inc. v. Reizen*, 743 F.2d 352, 358 (6th Cir. 1984); *American College of Obstetricians and Gynecologists v. Thornburgh*, 737 F.2d 283, 290 n. 6, (3d Cir.1984), *prob. juris. noted*, —— U.S. ——, 105 S.Ct. 2015, 85 L.Ed.2d 297 (1985) (*"ACOG"*), and cases cited therein. It is also indisputable that the Akron Center and Dr. Gaujean have standing to assert their own interests. *E.g., Singleton v. Wulff*, 428 U.S. 106, 96 S.Ct. 2868, 49 L.Ed.2d 826 (1976); *City of Akron v. Akron Center for Reproductive Health, Inc.*, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983). Rachel Roe's standing is obvious and has not been challenged by the defendants.

■ Defendants Celeste and Celebrezze, however, argue that Patty Poe is not a proper plaintiff in this case because

she does not state a claim.[2] Poe's affidavit states that she is currently sexually active and that she is "uncertain as to whether or not I am pregnant as of this date, but in the event that I am found to be pregnant, I would wish to terminate the pregnancy...." In *Roe v. Wade*, 410 U.S. 113, 127–128, 93 S.Ct. 705, 714–715, 35 L.Ed.2d 147 (1973), the Court held that a similar claim by a married couple in which the woman was not pregnant was too speculative to permit standing as plaintiffs to the litigation. Accordingly, Patty Poe is dismissed as a plaintiff from this action.[3]

#### B. *Prosecutors' Motions to Dismiss*

■ Defendants Rosen and Slaby both have filed motions to dismiss them as parties to this action, claiming that the duty to defend the constitutionality of state statutes falls upon the attorney general. While they are correct that the attorney general is required by statute to appear "[w]hen required by the governor or the general assembly ... in a cause in which the state is a party, or in which the state is directly interested ...," Ohio Rev.Code Ann. § 109.02 (Page 1984), Rosen and Slaby wrongly argue that they have no role in this action.

Rosen's duties as City Prosecutor for the City of Akron are defined by Ohio Rev. Code Ann. § 1901.34(A) (Page 1983):

> The village solicitor, city director of law, or similar chief legal officer for each municipal corporation within the territory of a municipal court shall prosecute all criminal cases brought before the municipal court ... for violation of state statutes or other criminal offenses occurring within the municipal corporation....

Since plaintiffs' activities which could produce liability under § 2919.12 occur in Akron, Rosen would be a prosecutor charged

---

**2.** Defendants Celeste and Celebrezze will hereinafter be referred to as "the state" and as "defendants" unless the Court expressly alludes to Rosen and Slaby, because only Celeste and Celebrezze submitted a brief on the merits of this action.

**3.** Even if Rachel Roe's pregnancy is terminated before the end of this litigation, however, she will continue to have standing under the "capable of repetition, yet evading review" standard. *Roe*, 410 U.S. at 125, 93 S.Ct. at 713.

with enforcement of the statute against them.

Slaby's duties as a County Prosecutor in Summit County, the county in which Akron lies, are defined by Ohio Rev.Code Ann. § 309.08 (Page 1979):

> The prosecuting attorney may inquire into the commission of crimes within the county and shall prosecute, on behalf of the state, all complaints, suits, and controversies in which the state is a party, and such other suits, matters, and controversies as he is required to prosecute within or outside the county....

Thus, Slaby also has statutory authority to prosecute the Akron Center and Dr. Gaujean for violations of § 2919.12. Moreover, Slaby would be statutorily required to prosecute actions to discipline Dr. Gaujean under § 4731.22 if requested by the secretary of the state medical board. Ohio Rev.Code Ann. § 4731.39 (Page 1977).

Accordingly, both Rosen and Slaby are proper parties to bear the injunctive relief requested by the plaintiffs. While they may understandably expect that the state will bear the costs of defending this litigation, they cannot be dismissed as defendants. *See Chernin v. Wechans,* —— F.Supp. —— No. C85–109 (N.D.Ohio March 31, 1986).

## C. *State's Motions to Dismiss*

The state defendants, Governor Celeste and Attorney General Celebrezze, argue that their participation in this suit is barred by the eleventh amendment. The eleventh amendment bars actions in a federal court by a citizen against his or her own state. *Hans v. Louisiana,* 134 U.S. 1, 10 S.Ct. 504, 33 L.Ed. 842 (1890). An action against a state official in his or her official capacity is in fact an action against the state. *Kentucky v. Graham,* —— U.S. ——, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985). However, the doctrine of *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), strips state officials of their eleventh amendment immunity in their official capacity when the official attempts to enforce an unconstitutional state law. Whether these defendants are proper parties to this action depends upon whether they have "some connection" with H.B. 319's enforcement. *Young,* 209 U.S. at 157, 28 S.Ct. at 453.

Plaintiffs conceded in argument that they rely solely upon the Ohio constitution's delegation of "overall responsibility for the execution of the laws of the State" to the governor for Celeste's connection with H.B. 319. They assert that the Attorney General's connection with H.B. 319 is his general duty as advisor to the prosecuting attorneys of the counties and to state officials and agencies, such as the Medical Board. Relying upon *Allied Artists Pictures Corp. v. Rhodes,* 473 F.Supp. 560 (S.D.Ohio 1979), *on reexamination,* 496 F.Supp. 408 (1980), *modified on other grounds,* 697 F.2d 656 (6th Cir.1982), plaintiffs contend that these general law enforcement duties constitute a sufficient "connection" to pierce the eleventh amendment.

Plaintiffs' reliance on *Allied Artist Pictures* is misplaced. Although the court in that case retained jurisdiction over the governor of Ohio under the execution clause of the Ohio Constitution, it relied upon cases holding "a sufficient likelihood that the connection be brought to bear against a plaintiff's interest exists where a state enacts regulatory legislation creating rights and relationships of substantial public interest not readily protectible in litigation between private parties." 496 F.Supp. at 425. However, *Allied* did not disagree with the general proposition that "[t]he mere fact that a governor is under a general duty to enforce state laws does not make him a proper defendant in every action attacking the constitutionality of a state statute." *Id.* at 426 (quoting *Shell Oil Co. v. Noel,* 608 F.2d 208, 211 (1st Cir.1979)). The Sixth Circuit affirmed the *Allied* district court's propriety in keeping the governor as a party, stating:

> Even in the absence of specific state enforcement provisions, the substantial public interest in enforcing the trade practices legislation involved here places

a significant obligation upon the Governor to use his general authority to see that state laws are enforced, see Ohio Constit. Art. III, § 6; Ohio Rev.Code Ann. § 2733.02 (Page 1981) (concerning equitable actions against corporations violating state laws). We thus find that the Governor has sufficient connection with the enforcement of the Act that he falls outside the scope of eleventh amendment protection and may be sued for the declaratory and injunctive relief requested here. Were this action unavailable to the plaintiffs, they would be unable to vindicate the alleged infringement of their constitutional rights without first violating an Ohio statute requiring a significant change in their business conduct. Such a result is clearly what the doctrine in *Ex Parte Young* was in part designed to avoid.

679 F.2d at 666 n. 5. The case before this Court is one where enforcement of the challenged statute is clearly delegated to the prosecuting attorneys of the state. Moreover, unlike trade practices legislation, H.B. 319 is primarily a criminal statute—an area of the law generally enforced by local prosecutors rather than state officials. Most importantly, plaintiffs are not in a position where they cannot bring suit for lack of a proper defendant to enjoin, as the Court has already concluded that prosecutors Rosen and Slaby are proper parties.

That the state is not responsible as a party in all suits challenging the constitutionality of state law is clear from 28 U.S.C. § 2403(b) (1982) ("§ 2403(b)") and Ohio Rev.Code Ann. § 2721.12 (Page 1981), which require that the attorney general must be notified of a constitutional challenge to a state statute and permitted to participate in the litigation. Since these statutes demonstrate that state participation is not mandatory, it follows that Celeste and Celebrezze need not be parties, absent a connection to the enforcement of the statute. Since the Court has found that the requisite connection does not exist, Celeste and Celebrezze will be dismissed from this action as defendants.

The Court will view the filing of this action against the state officials as certification required under § 2403(b). It will consider the Attorney General's participation in this litigation as that permitted by § 2403(b).

### III.

The principles governing the constitutionality of the states' regulation of abortions have been clearly set forth by the Supreme Court of the United States and undisputably bind this Court. In *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973), the Supreme Court concluded that the constitutional right to privacy encompasses the abortion decision reached by a pregnant woman in consultation with her doctor. However, the Court stated that this right is not absolute; state regulation is permissible to foster "compelling state interests" by "narrowly drawn" legislation. *Id.* 410 U.S. at 155, 93 S.Ct. at 728. The Court held as a matter of law that the point at which the states' interest in protecting the health of pregnant women becomes "compelling" is approximately at the end of the first trimester of pregnancy. *Id.* at 163, 93 S.Ct. at 732. It also concluded that the states' interest in protecting "potential life" becomes compelling at "viability," or when a fetus is "potentially able to live outside the mother's womb." *Id.* at 160, 163, 93 S.Ct. at 730, 732. Thus, during the first trimester of pregnancy, a woman and her physician may decide to abort a fetus free of state regulation. *Id.* at 163, 93 S.Ct. at 731. Beginning at approximately the end of the first trimester, states may regulate abortion procedures to foster maternal health. *Id.* at 164, 93 S.Ct. at 732. Subsequent to viability, states can regulate or proscribe abortion, except when an abortion is necessary to preserve the life or health of the mother. *Id.*

However, the Court has recognized that states have broader authority to regulate the abortion decisions of minor women than of adult women. While holding that permitting parents to exercise "an absolute, and possibly arbitrary, veto" over the

abortion decisions of their minor children is unconstitutional, the Court emphasized that it did not decide that every minor could give effective consent to obtain an abortion. *Planned Parenthood of Central Missouri v. Danforth,* 428 U.S. 52, 74–75, 96 S.Ct. 2831, 2843–2844, 49 L.Ed.2d 788 (1976). The Court later elaborated:

> We have recognized three reasons justifying the conclusion that the constitutional rights of children cannot be equated with those of adults: the peculiar vulnerability of children; their inability to make critical decisions in an informed, mature manner; and the importance of the parental role in child rearing.

*Bellotti v. Baird,* 443 U.S. 622, 634, 99 S.Ct. 3035, 3043, 61 L.Ed.2d 797 (1979) (*Bellotti II*) (plurality opinion). For these reasons, states may determine that regulation requiring parental consultation by minors seeking abortions is desirable. *Id.* 443 U.S. at 640, 99 S.Ct. at 3046. However, "[t]he need to preserve the constitutional right and the unique nature of the abortion decision, especially when made by a minor, require a state to act with particular sensitivity when it legislates to foster parental involvement in this matter." *Id.* at 642, 99 S.Ct. at 3047.

■ The *Bellotti II* plurality indicated that states cannot require parental consent for minors to obtain abortions without also providing an alternative procedure for authorization of these abortions. *Id.* at 643, 99 S.Ct. at 3048. Justice Powell described the constitutionally required "waiver proceeding":

> A pregnant minor is entitled in such a proceeding to show either: (1) that she is mature enough and well enough informed to make her abortion decision, in consultation with her physician, independently of her parents' wishes; or (2) that even if she is not able to make this decision independently, the desired abortion would be in her best interests. The

proceeding in which this showing is made must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained. In sum, the procedure must ensure that the provision requiring parental consent does not in fact amount to the "absolute, and possibly arbitrary, veto" that was found impermissible in *Danforth* [428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976)].

*Id.* at 643–644, 99 S.Ct. at 3048–3049 (footnote and citation omitted).[4] However, the Constitution is not violated by statutes requiring parental notice to the parents of immature dependent minors seeking abortions. *H.L. v. Matheson,* 450 U.S. 398, 409, 101 S.Ct. 1164, 1171, 67 L.Ed.2d 388 (1981).

With these principles in mind, this Court considers the plaintiffs' contentions that H.B. 319 violates due process.

## IV.

### A. Constitutional Requirement of a Waiver Procedure

The state initially argues that review of the waiver procedure established in § 2151.85 is unnecessary, for an alternative procedure to parental notification is not constitutionally required. The state relies on Justice O'Connor's statement in her *Akron* dissent that "no decision of this Court has yet held that parental notification in the case of mature minors is unconstitutional." 462 U.S. at 469 n. 12, 103 S.Ct. at 2513 n. 12. After noting that "at least four members of the current Supreme Court do not subscribe to Justice Powell's view [that the waiver procedure described in *Bellotti II* is constitutionally mandated for mature minors seeking to avoid parental notice]," defendants Celeste and Celebrezze's Motion to Dismiss at 29, the state laments that Justices Powell and Stewart have "unfortunately lumped parental con-

---

**4.** Although this plurality opinion was joined by four justices, rejected by four justices concurring in the judgment, and the remaining justice dissented from the judgment, the plurality opin-ion delivered by Justice Powell is controlling precedent. *See Akron,* 462 U.S. at 439, 103 S.Ct. at 2497.

sent and consultation together...." *Id.* at 30. It concludes that the requirements of parental notice and parental consent are distinguishable because only the latter constitutes an absolute veto over minors' decisions; therefore, waiver procedures are unnecessary for parental notice statutes.

The state's argument is inconsistent with explicit statements of a majority of the Supreme Court and the holdings of all courts examining notice statutes since the *Akron* decision in 1983. Although *Matheson* did not hold that the parental notification statute which the Court reviewed was unconstitutional, it expressly limited its holding to the parameters of "the constitutional rights of an immature, dependent minor." 450 U.S. at 409, 101 S.Ct. at 1171. In his *Matheson* concurrence, Justice Powell, joined by Justice Stewart, clarified:

> I join the opinion of the Court on the understanding that it leaves open the question whether [the notification statute] unconstitutionally burdens the right of a mature minor or a minor whose best interests would not be served by parental notification. I write to make clear that I continue to entertain the views on this question stated in my opinion in *Bellotti II.*

*Id.* at 414, 101 S.Ct. at 1174 (citations omitted). Although no parental notification statute was before the Court in *Akron*, 462 U.S. at 439 n. 29, 103 S.Ct. at 2497 n. 29, the majority opinion of the Court delivered by Justice Powell clearly stated that "a requirement [of parental notice] ... in the case of a mature minor seeking an abortion would be unconstitutional. *See H.L. v. Matheson*, 450 U.S., at 420, 101 S.Ct. at 1177 (POWELL, J., concurring); *id.*, at 428, n. 3, 101 S.Ct. at 1181, n. 3 (MARSHALL, J., dissenting)." 462 U.S. at 441 n. 31, 103 S.Ct. at 2498 n. 31. *See also id.* at 428 n. 10, 103 S.Ct. at 2491 n. 10 ("A majority of the Court, however, has indicated that these state and parental interests must give way to the constitutional right of a mature minor or of an immature minor whose best interests are contrary to parental involvement.").

The Seventh Circuit has unequivocally rejected the argument that a waiver procedure is not constitutionally required as an alternative to parental notification. After citing the Supreme Court's statements on notification statutes in *Akron,* the court continued:

> In requiring that states provide bypass procedures in connection with both consent and notification statutes, the Court has made no suggestion that procedures insufficient for consent statutes would be sufficient for notification statutes. Rather than differentiating between consent and notification statutes, the Court in *City of Akron* stated that it is "parental involvement" that an emancipated or mature minor must have an opportunity to avoid. 103 S.Ct. at 2491 n. 10. The apparent reasons for the similar treatment of notification and consent requirements is that, as a practical matter, a notification requirement will have the same deterrent effect on a minor seeking an abortion as a consent statute has. *See H.L. v. Matheson,* 450 U.S. at 420 & n. 9 [99 S.Ct. at 1177 & n. 9] (concurring opinion of Powell, J.) (stating that the rationale for requiring a state to provide a judicial bypass to a consent requirement is applicable to notification statutes).

> \* \* \* \* \* \*

Although notification requirements do not give parents the legal power to veto their daughter's abortion decision, as a practical matter they may. "[Y]oung pregnant minors, especially those living at home, are particularly vulnerable to their parents' efforts to obstruct both an abortion and their access to court." *Bellotti II,* 443 U.S. at 647 [99 S.Ct. at 3050] (plurality opinion of Powell, J.). It was a recognition of this vulnerability that led the plurality in *Bellotti II* to state that confidentiality was necessary in a waiver-of-consent proceeding. *See id.*

Because parental involvement brought about by either consent or notification statutes may result in similar efforts by parents to block the abortion, we will

apply the Supreme Court's analysis with respect to consent bypass procedures in our consideration of the constitutional sufficiency of Indiana's notification bypass procedures.

*Indiana Planned Parenthood Affiliates Association, Inc. v. Pearson,* 716 F.2d 1127, 1132 (7th Cir.1983). *Accord Zbaraz v. Hartigan,* 763 F.2d 1532, 1539 (7th Cir.), *appeal pending,* 54 U.S.L.W. 3311 (U.S. Oct. 16, 1985) (No. 85–673); *Glick v. McKay,* 616 F.Supp. 322, 325 (D.Nev.1985); *Orr v. Knowles,* No. CV 81-0-301 (D.Neb. 1983)

The state cites no case holding that waiver proceedings are dispensable in parental notification statutes. Indeed, the practice of states such as Ohio which include waiver proceedings in their notification statutes suggests that these states recognize that this procedure is constitutionally required. Moreover, even if this Court could accept the state's argument that the opinions of Justice O'Connor and three other justices are relevant to this issue, the state would still fail to demonstrate that a majority of the justices favor its position. In fact, Justice Burger, who delivered the opinion of the Court in *Matheson,* joined the majority in *Akron,* indicating that he concurs in Justice Powell's opinion on the necessity of alternative procedures. Finally, the practical equivalency for dependent minor women of consent and notification statutes requires that this Court eschew the distinction that the state attempts to draw. Therefore, the Court will analyze the constitutional sufficiency of § 2151.85 under the standards set forth in *Bellotti II.*

### B. *Vagueness*

Plaintiffs contend that many provisions of H.B. 319 are unconstitutionally vague, citing such language as the physician's "reasonable effort" to notify a minor's parents, § 2919.12(B)(2), and "reasonable cause to believe" a minor's representations, § 2919.12(C)(1). They also argue that the scienter requirement for imposition of criminal penalties upon physicians is unclear and that the statute's "constructive authorization" provisions leave physicians unclear as to when they can proceed without liability.

▮▮▮▮ The parties agree upon the standard to be applied when evaluating the alleged vagueness of H.B. 319.

It is settled that, as a matter of due process, a criminal statute that "fails to give a person of ordinary intelligence fair notice that his contemplated conduct is forbidden by the statute," *United States v. Harriss,* 347 U.S. 612, 617 [74 S.Ct. 808, 812, 98 L.Ed. 989] (1954), or is so indefinite that "it encourages arbitrary and erratic arrests and convictions," *Papachristou v. Jacksonville,* 405 U.S. 156, 162 [92 S.Ct. 839, 843, 31 L.Ed.2d 110] (1972), is void for vagueness.

*Colautti v. Franklin,* 439 U.S. 379, 390, 99 S.Ct. 675, 683, 58 L.Ed.2d 596 (1979). Federal court abstention from the construction of an ambiguous state statute may be appropriate if the constitutional question cannot be framed in the absence of an authoritative construction. *Bellotti v. Baird,* 428 U.S. 132, 148, 96 S.Ct. 2857, 2866, 49 L.Ed.2d 844 (1976) (*"Bellotti I"*). However, federal courts should construe a statute so as to avoid unconstitutionality when such a construction is fair, obviating the need for abstention. *Planned Parenthood Association of Kansas City, Missouri, Inc. v. Ashcroft,* 462 U.S. 476, 493, 494 n. 21, 103 S.Ct. 2517, 2526 n. 21, 76 L.Ed.2d 733 (1983); *Akron,* 462 U.S. at 441, 103 S.Ct. at 2498.

▮▮▮▮ Section 2919.12(B)(1)(a) states, "No person shall knowingly perform or induce an abortion upon a woman who is pregnant, unmarried, under eighteen years of age, and unemancipated" unless a statutory exception is met. Plaintiffs argue that it is unclear whether the word "knowingly" applies only to the performance of the abortion, or whether it also applies to the physician's mental state regarding the status of the young woman. They fear that physicians will be held strictly liable for knowingly performing an abortion upon women whom they did not know were unmarried, under eighteen years of age, or

unemancipated. This ambiguity, they assert, will make physicians hesitant about performing abortions on women who appear to be minors, effectively chilling the constitutional rights of women outside the class created by the statute as well as those within it.

Plaintiffs argument is not well taken. Subsection (C)(1) states:

It is an affirmative defense to a charge under Division (B)(1) or (2) of this section that the pregnant woman provided the person who performed or induced the abortion with false, misleading or incorrect information about her age, marital status, or emancipation ... and the person who performed or induced the abortion did not otherwise have reasonable cause to believe the pregnant woman was under eighteen years of age, unmarried, or unemancipated....

Clearly, such an affirmative defense would be meaningless if the word "knowingly" were not read to modify the clause describing the young woman's status. A "fair construction" of § 2919.12(B)(1)(a) requires that the scienter element be read to apply to both clauses. Thus, the "perils of strict criminal liability" observed by the *Colautti* court are absent, 439 U.S. at 395, 99 S.Ct. at 686, and § 2919.12(B)(1)(a) is not unconstitutionally vague. *See ACOG*, 737 F.2d at 294 (reading intent requirement into statute to save it from unconstitutionality).

▪ Nor can this Court agree that the other phrases pointed to by the plaintiffs are impermissibly vague. By insisting on definitions of commonly understood words, plaintiffs only confuse their meanings. Phrases such as "reasonable efforts" and "reasonable cause to believe" must be interpreted in the context of the conduct they modify, as they are in other legal settings. *See Ashcroft*, 462 U.S. at 492 n. 18, 103 S.Ct. at 2525 n. 18 ("Although the question of whether a minor is emancipated turns upon the facts and circumstances of each individual case, the Missouri courts have adopted general rules to guide that determination, and the term is one of general usage and understanding in the Missouri

common law."). The scienter element in the criminal offense ameliorates any slight uncertainty in these words. *Colautti*, 439 U.S. at 395, 99 S.Ct. at 685 (observing close relationship between *mens rea* requirement and constitutionality of ambiguous statute).

▪ However, plaintiffs' arguments regarding the constitutionality of the "constructive order" provisions are quite different. Section 2151.85(B)(1) states that the juvenile court's failure to hold the required hearing within five business days of the filing of the complaint operates as a constructive order that an abortion can be performed without parental notification. Similarly, § 2505.073(A) provides that a constructive order will be effective if the court of appeals does not enter a judgment within five days of the docketing of the appeal. A physician will not be either criminally or civilly liable under the statute if either court has constructively authorized the abortion without notification. § 2919.12(B)(1)(a)(iv). However, a physician will have no actual notification or tangible evidence that such constructive authorization has been given. Such a "pocket veto" has been found to be unconstitutional by at least one court. *Glick*, 616 F.Supp. at 322.

The state responds that the difficulties presented by a constructive order are part of its very purpose. It argues that the constructive order based on a lack of action is the only way to remedy a court's failure to act promptly. This Court does not share the state's pessimism that proper notification of a doctor that he or she is authorized to proceed cannot be accomplished. For instance, it does not seem unreasonable that the clerk of court could notify the physician at the end of five days that the court has failed to take action. Accordingly, the constructive order provisions of H.B. 319 are constitutionally inadequate.

### C. *Alleged Defects in the Waiver Procedure*

#### 1. *Requirement that notice be performed by a physician*

▪ Section 2919.12(B)(1)(a)(i) states in part, "No person shall knowingly perform

or induce an abortion ... unless ... (i) ... the person has given at least 24 hours actual notice...." The language of the statute, then, literally requires that the notification be accomplished by the doctor performing an abortion, rather than by his or her aides or employees. The state tacitly admits that this interpretation is correct by arguing that such a requirement is constitutional.

In *Akron*, the Supreme Court struck down a provision requiring that the counseling necessary for a woman to render informed consent to an abortion procedure be provided by the attending physician. The Court stated:

We are not convinced, however, that there is as vital a state need for insisting that the physician performing the abortion, or for that matter any physician, personally counsel the patient in the absence of a request. The state's interest is in ensuring that the woman's consent is informed and unpressured; the critical factor is whether she obtains the necessary information and counseling from a qualified person, not the identity of the person from whom she obtains it.

462 U.S. at 448, 103 S.Ct. at 2502 (footnote omitted). However, the Court did not reject the notions that the physician be required to verify that adequate counseling be provided and that minimum qualifications be established for counselors. *Id.* at 449, 103 S.Ct. at 2502.

The state argues that several courts reviewing notification statutes with similar language have failed to object to them on the grounds here asserted. Each case cited by the state is readily distinguishable. *Matheson* was decided two years before *Akron*. This issue was apparently not raised before the Sixth Circuit in *Akron*, 651 F.2d at 1198, nor before the Seventh Circuit in *Pearson*. Moreover, the state's attempt to characterize this duty as "merely ministerial" does not advance its case at all, but rather suggests that its interest in having the physician perform this function is even less weighty than having him or her perform counseling to obtain informed con-

sent. Since requiring the physician to effect notification may add to the cost of abortion procedures, *cf. Akron*, 462 U.S. at 447, 103 S.Ct. at 2501, while the state's interest is minimal, this provision unduly burdens a minor woman's right to choose an abortion.

**2.** *"Clear and convincing evidence" burden of proof*

■ Section 2151.85(C) mandates that the determinations of whether a minor is sufficiently mature and well enough informed to make her abortion decision without notification, and whether notification would not be in her best interests, must be demonstrated by "clear and convincing evidence" for the juvenile court to issue an order authorizing the abortion to proceed without parental notification. The plaintiffs' challenge to the constitutionality of a burden of proof in a *Bellotti*-type waiver proceeding appears to be an issue of first impression.

A burden of proof does more than just establish a minimum showing which plaintiffs must plead and prove to proceed in a case.

The function of a standard of proof, as that concept is embodied in the Due Process Clause and in the realm of factfinding, is to "instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness of factual conclusions for a particular type of adjudication." ... The standard serves to allocate the risk of error between the litigants and to indicate the relative importance attached to the ultimate decision.

*Addington v. Texas*, 441 U.S. 418, 423, 99 S.Ct. 1804, 1807, 60 L.Ed.2d 323 (1979). The Supreme Court has required "an intermediate standard of proof—'clear and convincing evidence'—when the individual interests at stake in a state proceeding are both 'particularly important' and 'more substantial than mere loss of money.'" *Santosky v. Kramer*, 455 U.S. 745, 756, 102 S.Ct. 1388, 1396, 71 L.Ed.2d 599 (1982) (citing *Addington*, 441 U.S. at 424, 99 S.Ct.

at 1808). As a result, the Court has held that the Constitution requires a showing of at least "clear and convincing evidence" by states in mental health commitment cases (*Addington*) and in adjudications of children as permanently neglected (*Santosky*).

The *Santosky* court stated that an inquiry into whether a particular burden of proof satisfies due process must involve the application of the analysis of *Matthews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). 455 U.S. at 754, 102 S.Ct. at 1395. *Eldridge* identifies three factors to be considered:

> First, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

424 U.S. at 336, 96 S.Ct. at 903.

Justice Powell identified the competing interests involved when a minor seeks an abortion in his *Matheson* concurrence:

> The right to make that decision may not be unconstitutionally burdened. *Roe v. Wade*, 410 U.S. 113, 154 [93 S.Ct. 705, 727, 35 L.Ed.2d 147] (1973); *Planned Parenthood of Central Mo. v. Danforth*, 428 U.S., at 74–75 [96 S.Ct., at 2843–2844]. In addition, the minor has an interest in effectuating her decision to abort, if that is the decision she makes. *Id.*, at 75 [96 S.Ct., at 2843]; *Bellotti II*, 443 U.S. at 647 [99 S.Ct. at 3050]. The state, aside from the interest it has in encouraging childbirth rather than abortion, *cf. Maher v. Roe*, 432 U.S. 464 [97 S.Ct. 2376, 53 L.Ed.2d 484] (1977); *Harris v. McRae*, 448 U.S. 297 [100 S.Ct. 2671, 65 L.Ed.2d 784] (1980), has an interest in fostering such consultation as will assist the minor in making her decision as wisely as possible. *Planned Parenthood of Central Mo. v. Danforth, supra*, 428 U.S. at 91 [96 S.Ct. at 2851] (STEW-ART, J., concurring); *post*, 99 S.Ct. at 1178 (STEVENS, J., concurring in judgment). The state also may have an interest in the family itself, the institution through which "we inculcate and pass down many of our most cherished values, moral and cultural." *Moore v. East Cleveland*, 431 U.S. 494, 503–504 [97 S.Ct. 1932, 1937–1938, 52 L.Ed.2d 531] (1977). Parents have a traditional and substantial interest in, as well as a responsibility for, the rearing and welfare of their children, especially during immature years. *Bellotti II, supra*, 443 U.S., at 637–639 [99 S.Ct. at 3044–3046].

450 U.S. at 419, 101 S.Ct. at 1176.

Thus, the waiver procedure required in a parental notification statute will balance the minor woman's constitutional right to choose to abort against the state's interest in promoting family harmony and in insuring that she is fully informed. While the state's interests are weighty, the only constitutional interest involved in this balancing is the woman's privacy right implicated in her decision to abort. In both *Santosky* and *Addington*, the Supreme Court recognized that the liberty interest of the individual outweighs the state's interest in protecting its citizens. The case *sub judice* is closely analogous, and this Court must find that the state's *parens patriae* interest is outweighed by the minor woman's right to choose an abortion.

The remaining *Eldridge* factor, the risk of an erroneous deprivation of the woman's constitutional right, also weighs against the imposition of a "clear and convincing evidence" standard of proof upon the minor. The *Santosky* court noted that one of the factors increasing the likelihood of erroneous decisions in neglect proceedings is "imprecise substantive standards that leave determinations unusually open to the subjective values of the judge." 455 U.S. at 762, 102 S.Ct. at 1399. This factor is clearly present in the waiver procedure, where judges are called upon to determine whether a young woman is "sufficiently mature and well informed enough" and

whether notification is "not in the best interests of the complainant." In addition, the judge is required to make this decision immediately at the end of a hearing resembling an interview more than an evidentiary proceeding. Since the judge's decision will necessarily be based largely upon subjective standards without the benefit of any evidence other than a woman's testimony, perhaps guided by a court-appointed lawyer, the "clear and convincing" standard imposed upon the woman creates an unacceptably high risk of erroneous determinations.

The state relies upon the *ex parte* nature of the waiver procedure to justify the heavy burden on the minor, arguing that parental interests would be unprotected if the minor could obtain a notification waiver at a lower standard in a hearing which parents are not permitted to attend. The state's argument misperceives both the interests implicated by the notification statute and the nature of the waiver proceeding. The state's interests in promulgating a notification statute are to protect the minor from making an inappropriate decision and to promote family integrity; the state's role is not that of an advocate for interests which might be asserted by parents. Moreover, that the alternative consent mechanism envisioned by the *Bellotti II* plurality was not meant to be an adversary proceeding is demonstrated in its caveat that standard judicial proceedings were not constitutionally required, but that "much can be said for employing procedures and a forum less formal than those associated with a court of general jurisdiction." 443 U.S. at 643 n. 22, 99 S.Ct. at 3048 n. 22. Instead, the alternative procedure is required to allow a factfinder to satisfy himself or herself that the minor's status is such that her decision to abort should stand without parental involvement. The minor seeks to demonstrate that her constitutional right can properly be exercised; the interests of the state and her

parents are outweighed if she can properly make this decision, and these interests have no bearing on the determination of her status.

In *Addington* and *Santosky*, the Supreme Court held that due process required that heightened burdens of clear and convincing evidence be placed upon the state when it acted to deprive individuals of a liberty interest. In H.B. 319, the state attempts to place the same burden on individuals seeking to exercise a liberty interest, rather than on itself. Placing this heavy burden of proof on women using the waiver procedure is inconsistent with the teaching of *Addington, Santosky* and *Eldridge* and is constitutionally impermissible.[5]

### 3. *Pleading requirements*

 Plaintiffs contend that the pleading requirement of H.B. 319 will, on its face, prohibit the juvenile court judges from making constitutionally mandated findings of fact. Specifically, § 2151.-85(C)(1) requires that the complaint be dismissed if it alleges *only* that the woman is sufficiently mature and well enough informed to make the abortion decision without notification of her parents, and if the judge cannot make that finding. Similarly, § 2151.85(C)(2) requires that the complaint be dismissed if the complaint's *only* allegation is that there is evidence of a "pattern of physical, sexual, or emotional abuse" by the parents or that otherwise notification is not in the minor's best interests, and the judge is unable to make that finding. Only if the minor has made both allegations will the court be permitted to make both findings. § 2151.85(C)(3). Consistent with those requirements, and pursuant to § 2151.85(G), the Clerk of the Supreme Court of Ohio has created three different complaint forms for the waiver proceeding: one contains the "maturity" allegation; a

---

**5.** The Court proffers no opinion regarding what burden of proof in a waiver procedure would be constitutional.

second contains the "best interests" allegations; and a third contains both.[6]

The plain language of *Bellotti II* mandates that both factual determinations be made to protect the constitutional rights of the minor utilizing the waiver procedure:

We conclude, therefore, that under state regulation such as that undertaken by Massachusetts, every minor must have the opportunity—if she so desires—to go directly to a court without first consulting or notifying her parents. If she satisfies the court that she is mature and well enough informed to make intelligently the abortion decision on her own, the court must authorize her to act without parental consultation or consent. If she fails to satisfy the court that she is competent to make this decision independently, she must be permitted to show that an abortion nevertheless would be in her best interests. If the court is persuaded that it is, the court must authorize the abortion. If, however, the court is not persuaded by the minor that she is mature or that the abortion would be in her best interests, it may decline to sanction the operation.

443 U.S. at 647–648, 99 S.Ct. at 3050. Thus, the statute's failure to allow the juvenile court to make both determinations unless the minor selects the third complaint form, is unconstitutional.

The state's response that the minor's court-appointed attorney will help her amend the complaint is problematic on several grounds. First, as a practical matter, having two complaint forms which must be discarded by the minor's lawyer and replaced with the only one which is constitutionally correct is nothing short of absurd. Second, the Constitution need not depend on the actions of lawyers to ensure that unconstitutional provisions of state laws are not applied. Finally, there is no guarantee that the minor's lawyer will correct the error, particularly if he or she is unfamiliar with the requirements of *Bellotti II*. Accordingly, §§ 2151.85(C)(1) and (2) must be deemed constitutionally infirm.[7]

### 4. *Waiting period*

■ Section 2919.12(B)(1)(a)(i) requires that twenty-four hours must pass after actual notice is given to the proper individual before the physician can perform the abortion, unless one of three exceptions exist. Section 2919.12(C)(2) provides that constructive notice is effective after a forty-eight hour wait. Plaintiffs argue that these waiting periods are unconstitutional, relying upon the Supreme Court's decision in *Akron* that a twenty-four hour waiting period after counseling is impermissible. 462 U.S. at 450, 103 S.Ct. at 2503.

The Seventh Circuit has relied upon the rationale of *Akron* to strike down a twenty-four hour waiting period in notification statutes. In *Pearson*, it noted that the waiting period required two trips to the physician, increasing costs and delays, and it characterized the waiting period as "arbitrary and inflexible." 716 F.2d at 1143. In *Zbaraz*, the court concluded that the waiting period does not significantly further the state's interest when combined with the notification requirement. 763 F.2d at 1538.

However, the waiting period in H.B. 319 is not "arbitrary and inflexible," but instead accommodates cases in which the waiting period is unnecessary. The statute provides that the waiting period need not be observed if the minor's parents submit

---

6. An examination of the complaint forms reveals that they contain no allegation that the complainant has been subjected to a "pattern of physical, sexual, or emotional abuse" by the parent. However, this Court is barred from requiring the state to conform its conduct to state law by the eleventh amendment. *Pennhurst School and Hospital v. Halderman,* 465 U.S. 89, 106, 104 S.Ct. 900, 911, 79 L.Ed.2d 67 (1984).

7. The state's observation that a mature minor will choose to file the complaint with both allegations underestimates the understanding of pleading requirements by laypeople. It also ignores that a minor who feels that she is mature enough to make the decision to abort without parental notification may believe that the additional allegation that notification is not in her best interests is inconsistent.

written consent, § 2919.12(B)(1)(a)(ii); if the notified parent "clearly and unequivocally" expresses that he or she does not wish to consult with the minor, § 2919.-12(B)(3); or if the physician performs the abortion in response to "an immediate threat of serious risk to the life or physical health" of the minor. § 2919.12(C)(2). Thus, the waiting period is carefully tailored to effectuate actual consultation. Despite the Seventh Circuit's correct observations of the burdens which the waiting period may place upon the minor, the notification procedure which the Supreme Court explicitly upheld for some minors in *Matheson* would be an empty formalism with no practical effect if the abortion could proceed before the parental consultation could take place. Thus, this Court declines to follow the Seventh Circuit's lead in striking down waiting periods, since the waiting period in this statute is narrowly tailored to effectuate parental consultation after notification.[8]

### 5. *Court-appointed counsel on appeal; Appeal to Ohio Supreme Court*

▬▬▬ Plaintiffs challenge the constitutionality of a waiver proceeding which does not provide for appointed counsel on appeal or for appeal to the Supreme Court of Ohio. Section 2151.85(B)(2) establishes that a juvenile court hearing a waiver proceeding shall appoint an attorney if the minor has not already retained one. If the court eventually dismisses the complaint, it is obligated to immediately notify the complainant of her right to appeal. § 2151.-85(E). Section 2505.073, which provides for an appeal of a dismissal by the juvenile court to the court of appeals, states that a notice of appeal filed with the clerk of the juvenile court within four days of the dismissal will result in the forwarding of the record to the clerk of the court of appeals and the docketing of the appeal. Although the filing of a brief and oral argument are contemplated by the statute, it states that "the court of appeals ... shall liberally

modify or dispense with the formal pleading requirements that normally apply as to the contents and form of an appellant's brief." § 2505.073(A).

In *Pearson*, the Seventh Circuit held that *Bellotti II's* command that the waiver proceeding provide "an *effective* opportunity for an abortion to be obtained," 716 F.2d at 1137 (emphasis of the *Pearson* court), required that counsel must be appointed for the minors exercising their rights. 716 F.2d at 1138. The court reached this conclusion by relying on the likelihood that court-appointed counsel is the only option for representation available to minors, the minor's need for aid in presenting her case, and the possibility that attorneys will not volunteer to represent minors in these hearings. *Id.* at 1137–1138.

The *Pearson* court noted the basic rule that "due process generally does not require that a state provide a civil litigant with counsel." *Id.* at 1137. The Supreme Court confronted this issue in *Lassiter v. Department of Social Services of Durham County*, 452 U.S. 18, 101 S.Ct. 2153, 68 L.Ed.2d 640 (1981), where an indigent mother argued that she had been denied due process because counsel had not been appointed for her in a proceeding to terminate her parental rights. The Court stated that the three *Eldridge* factors must be weighed against the presumption that an indigent litigant only has a right to appointed counsel when facing a loss of his or her physical liberty in order to determine whether appointment of an attorney is constitutionally required. *Id.* at 31, 101 S.Ct. at 2161. Although in some situations the three *Eldridge* factors might outweigh the presumption, the Court found that this is not inevitably so. It concluded that the appointment of counsel is not constitutionally required in every parental termination proceeding, but that the trial court should decide whether in a given case due process required that counsel be appointed. *Id.* at 31–32, 101 S.Ct. at 2161–2162.

---

8. Even the *Pearson* court upheld a forty-eight hour constructive notice provision, to the extent

that the parent had not responded during that period of time. 716 F.2d at 1143.

Based on *Lassiter*'s holding, this Court rejects the argument that appointment of counsel is constitutionally required in every appeal from a dismissal of an abortion petition. Such a determination may instead be made on a case-by-case basis. The need for an attorney in the appeals process is obviated by the guidance to be given the minor at the trial level and the statutory command that a minor's "brief" shall be liberally accepted. Moreover, "argument" can be waived if the minor does not wish to speak with the appeals panel, although she might find doing so beneficial rather than penalizing. However, whether counsel shall be appointed for the appeal can be left to the discretion of the court.

Plaintiffs' argument that failure to provide for an appeal to the Ohio Supreme Court is a constitutional deficiency is also unavailing. While *Bellotti II* mentions "any appeals which may follow," 443 U.S. at 644, 99 S.Ct. at 3048, it does not intimate that two appeals are constitutionally required. Nor do plaintiffs cite any case holding that an appeal to the supreme court is essential. In fact, the Constitution of Ohio establishes appellate jurisdiction as a matter of right only for cases originating in the courts of appeals, cases in which the death penalty has been affirmed, and cases involving questions arising under the Constitution of the United States or Ohio. Ohio Const. art. IV, § 2(A). Thus, an appeal of a dismissal and an affirmance to the highest court is not constitutionally required in H.B. 319. *Cf. Ross v. Moffitt*, 417 U.S. 600, 94 S.Ct. 2437, 41 L.Ed.2d 341 (1974) (refused to extend constitutional requirement that counsel be appointed to indigent criminal defendant for first appeal as of right to discretionary appeals).[9]

### 6. *Self-incrimination*

 Plaintiffs contend that a minor woman admitting that she engages in sexual activity by using the waiver procedure exposes herself to an adjudication as an "unruly child." *In re J.P.*, 32 Ohio Misc. 5, 287 N.E.2d 926 (Stark Co. C.P.1972); Ohio Rev.Code Ann. § 2151.02.2 (Page 1976) (" 'Unruly child' includes any child: ... (C) Who so deports himself as to injure or endanger the health or morals of himself or others....."). Ohio Rev.Code Ann. § 2151.-35.4 (Page 1976) ("§ 2151.35.4") provides for the disposition of an unruly child:

If the child is adjudged unruly the court may:

(A) Make any of the dispositions authorized under section 2151.353 [2151.35.-3] of the Revised Code [governing abused, neglected or dependent children];

(B) Place the child on probation under such conditions as the court prescribes;

(C) Suspend or revoke the operator's or chauffeur's license issued to such child; suspend or revoke the registration of all motor vehicles registered in the name of such child.

If after making such disposition the court finds, upon further hearing, that the child is not amenable to treatment or rehabilitation under such disposition, the court may make a disposition otherwise authorized under section 2151.355 [2151.-35.5] of the Revised Code [governing delinquent children].

Plaintiffs assert that since an unruly child can be placed in a "youth home" under Ohio Rev.Code Ann. § 2151.35.3 (Page Supp.1985), or a juvenile correctional institution under Ohio Rev.Code Ann. § 2151.-35.5 (Page Supp.1985), a minor seeking to use the waiver proceeding would be forced to forego her fifth amendment right against self-incrimination.

The right against self-incrimination applies to juveniles as well as to adults. *In re Gault*, 387 U.S. 1, 55, 87 S.Ct. 1428, 1458, 18 L.Ed.2d 527 (1967). Although juvenile proceedings are often characterized as "civil" rather than "criminal," the availability of the privilege depends upon the exposure which a statement invites. *Id.* 387 U.S. at 49, 87 S.Ct. at 1455. Thus,

---

**9.** The issue of whether appointment of counsel before the initial factfinder is constitutionally required is not before this Court, since H.B. 319 already provides that counsel shall be appointed.

"juvenile proceedings to determine 'delinquency,' which may lead to commitment to a state institution, must be regarded as 'criminal' for purposes of the privilege against self-incrimination." *Id.*

Plaintiffs' contention that a minor's use of the waiver procedure invokes the principles of *Gault* requires a considerable stretch of the imagination. First, they are able to cite only one case, which is more than a decade old, where a minor has been adjudicated "unruly" for having engaged in sexual activity with another minor. Then they submit that the possibility that a minor will be placed in the custody of a state or county social service agency requires fifth amendment protection. *Gault*, however, referred to "commitment to a state institution" for criminal conduct; this Court cannot entertain the suggestion that *Gault* requires fifth amendment protection for statements which might remove an abused or neglected child from a bad home. Finally, plaintiffs point out that § 2151.35.4 permits an unruly child to be treated as a delinquent child if "the child is not amenable to treatment or rehabilitation" under a previous disposition. The connection between requesting a waiver from parental notification for an abortion and commitment in a state institution as a juvenile delinquent is too tenuous to be taken seriously in a facial attack on the validity of the statute.[10] Plaintiffs' fifth amendment argument must be rejected.

### 7. *Waiver procedure—expedition*

■ Plaintiffs argue that the timeframe established by the statute for the waiver proceeding is too long to pass constitutional muster under *Bellotti II*'s command that "[t]he proceeding ... must assure that a resolution of the issue and any appeals that may follow will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained." 443 U.S. at 644,

99 S.Ct. at 3048. Section 2151.85(B)(1) provides that the juvenile court shall hold its hearing "at the earliest possible time, but not later than the fifth business day after the day that the complaint is filed." The court is then required to enter its judgment immediately after the hearing is concluded. *Id.* The timeliness of the appeals process is governed by § 2505.073(A):

A complainant whose complaint under section 2151.85 of the Revised Code is dismissed by a juvenile court, may appeal in accordance with this section. Within four days after a notice of appeal is filed in an action arising under that section, the clerk of the juvenile court shall deliver a copy of the notice of appeal and the record on appeal to the clerk of the court of appeals named in the notice. Upon receipt of the notice and record, the clerk of court of appeals shall place the appeal on the docket of the court.

The appellant shall file her brief within four days after the appeal is docketed. Unless the appellant waives the right to oral argument, the court of appeals shall hear oral argument within five days after the appeal is docketed. The court of appeals shall enter judgment in the appeal immediately after the oral argument or, if oral argument has been waived, within five days after the appeal is docketed.

\* \* \* \* \* \*

Upon motion of the appellant and for good cause shown, the court of appeals may shorten or extend any of the maximum times set forth in this division....

Although § 2505.073 does not enunciate whether it refers to calendar or business days, the Court must assume that Ohio Civ.R. 6, which prescribes that intermediate Saturdays, Sundays, and legal holidays shall be excluded from computations of periods of time of less than seven days, applies. Thus, a diligent complainant who

---

10. At argument, the state moved to strike several exhibits from the record, including the Affidavit of William A. Kurtz, which states that minor women have been adjudicated "unruly" by the Juvenile Court of Cuyahoga County based upon their sexual activity. However, plaintiffs have not moved for the admission of these exhibits into evidence, and the Court does not rely upon them in this facial challenge to H.B. 319.

is forced to appeal would wait approximately three weeks for a final resolution of her case.

Since *Bellotti II,* the only statement by the Supreme Court regarding expediency is set forth in *Ashcroft:*

As to expedition of appeals, § 188.028.-2(6) provides in relevant part:

"The notice of intent to appeal shall be given within twenty-four hours from the date of issuance of the order. The record on appeal shall be completed and the appeal shall be perfected within five days from the filing of notice to appeal. Because time may be of the essence regarding the performance of the abortion, the supreme court of this state shall, by court rule, provide for expedited appellate review of cases appealed under this section."

We believe this section provides the framework for a constitutionally sufficient means of expediting judicial proceeding. Immediately after the effective date of this statutory enactment, the District Court enjoined enforcement. No unemancipated pregnant minor has been required to comply with this section. Thus, to this point in time, there has been no need for the State Supreme Court to promulgate rules concerning appellate review. There is no reason to believe that Missouri will not expedite any appeal consistent with the mandate in our prior opinions.

462 U.S. at 491 n. 16, 103 S.Ct. at 2525 n. 16. Several courts have looked to this language as a benchmark for expedition and have enjoined notification statutes pending rulemaking by appellate courts. *ACOG,* 737 F.2d at 297; *Zbaraz,* 763 F.2d at 1541; *Glick,* 616 F.Supp. at 327.

In enacting H.B. 319, however, the Ohio legislature did not delegate authority for developing an expeditious appellate process to the state supreme court, but instead specified exact periods of time. This Court, then, must evaluate the expedition of the waiver proceeding from the face of the statute, not from the perspective of

whether it could be rendered constitutional by rulemaking of the Ohio supreme court.

The Supreme Court has clearly recognized that time is of the essence when deciding whether to proceed with an abortion. *Matheson,* 450 U.S. at 412, 101 S.Ct. at 1172; *see Roe,* 410 U.S. at 150, 93 S.Ct. at 725 (risk to maternal health increases as pregnancy continues). The *Glick* court has stated that a waiver procedure requiring about three weeks to complete "raises serious questions of the statute's constitutionality because time lost in the first trimester is crucial." 616 F.Supp. at 326. This Court must agree that a three week procedure, such as that in H.B. 319, is unconstitutionally long. Even though the statute before the Court requires that the appeal be docketed within four days—a shorter period than that found to be constitutionally sufficient in *Ashcroft,* the periods of five business days allocated to the juvenile and appellate courts are of questionable length when considered separately, and clearly unconstitutional when added together. Judicial notice may be taken of the fact that teenage women, in general, are inclined towards irregular periods. Consequently, a minor will require at least eight to ten weeks to discover and confirm that she is pregnant and to consider her options. The three week period needed to obtain permission to proceed with an abortion without parental notification will push her close to, if not into, her second trimester of pregnancy. Not only will the abortion procedure become risky enough at that time to justify state intervention to protect her health, *Roe,* 410 U.S. at 163, 93 S.Ct. at 731, but the cost of the procedure must also rise to cover the cost of state regulation.

The time-frame created by H.B. 319 is not saved from unconstitutionality by § 2505.073's provision that the court of appeals may lengthen or shorten the maximum times set forth therein. A cursory examination of a map of Ohio demarcating the areas of the respective courts of appeals suggests that many courts will be pressured to convene and hear an appeal in even five business days. The Fourth Cir-

cuit Court of Appeals, for instance, hears appeals from thirteen counties in southern Ohio. If the three judges who sit in that circuit are not scheduled to sit together within the five day period, or a substitute judge is not readily available, it may be difficult to convene within the week, to say nothing of receiving and reviewing the record of the juvenile court within that time. It is unlikely that appellate courts faced with such problems of time and geography would be in a position to expedite a hearing at an appellant's request.[11]

It is clear that the waiver procedure created by the General Assembly could be drafted to insure a more expeditious time frame. Most obviously, the five day period given to the trial court seems unnecessarily long. However, the exact procedure which is constitutionally acceptable must be developed by the legislature, rather than by this Court. This Court holds only that the procedure set forth in H.B. 319 does not meet the constitutional requirement of expedition demanded by *Bellotti II.*

### 8. *Waiver procedure—confidentiality*

 *Bellotti II* commands that a waiver procedure must be confidential as well as expeditious. 443 U.S. at 644, 99 S.Ct. at 3048. In an apparent attempt to comply with this mandate, the legislature provided that records of such proceedings under § 2151.85 are not "public records," Ohio Rev.Code Ann. § 149.43 (Page Supp.1985), and it provided generally that any such procedure be "conducted in a manner that will preserve the anonymity" of the complainant. §§ 2151.85(F), 2505.073(B). The complaint form instructions promulgated by the Clerk of the Ohio Supreme Court state:

> Confidentiality: The confidentiality of this proceeding will be maintained by the court, its officers and employees. In order to preserve this confidentiality, the court will consider your name to be Jane Doe and, in all proceedings and documents, will refer to you as Jane Doe or complainant. If you do not have any attorney, you must, however, sign your real name at the end of the complaint and give an address where the court can contact you throughout this proceeding.

Despite these laudable steps toward complying with *Bellotti II*'s anonymity requirement, the waiver procedure is fraught with confidentiality problems.

The Third Circuit has stated:

> The Missouri statute upheld in ·*Ashcroft* establishing alternative court proceedings for minor consent contained detailed provisions assuring confidentiality and dispatch, establishing a clear and simple procedure for the minor to follow in setting forth her petition, and directing court personnel to assist the minor in preparing the petition. *Ashcroft,* 103 S.Ct. at 2519–2520 n. 4, 2525–2526. Comparable provisions are absent in the Pennsylvania statute. This difference is critical. To pass constitutional muster, the alternative judicial procedure must be an established and practical avenue and may not rely solely on generally stated principles of availability, confidentiality, and form.

*ACOG,* 737 F.2d at 297. H.B. 319 contains little more than the "generally stated principles of … confidentiality" condemned by the Third Circuit. The complaint forms do permit the minor to identify herself by a pseudonym. *Cf. Ashcroft,* 462 U.S. at 491 n. 16, 103 S.Ct. at 2525 n. 16 (confidentiality is assured by use of minor's initials on petition). However, other problems are not dealt with by the statute or the forms. The complaint form requires the petitioner to give an address where she can be reached throughout the proceeding. It is difficult to believe that a minor could give any such address except that of her parents. Moreover, there are no indications of how clerks offices shall assure that the record of these cases will be distinguished

---

**11.** Of course, if a circuit court is unable to overcome these problems within the five days, it will have no opportunity to decide the case, and a constructive order will be effected. If this should happen, the minor would have been forced to delay her abortion for three weeks, perhaps dangerously, without the interest of the state being advanced at all.

from the records of all other cases which are available to the public. Nor are there measures for the storage of the record after the case is closed to prevent its public availability.

Even the venue provisions of § 2151.85 exacerbate the confidentiality problem. Subsection (A) provides that a complaint may be filed:

[I]n the juvenile court of the county in which she has a residence or legal settlement, in the juvenile court of any county that borders to any extent the county in which she has a residence or legal settlement, or in the juvenile court of the county in which the hospital, clinic, or other facility in which the abortion would be performed or induced is located....

If the minor resides in a small or rural county, she may be recognized and receive no anonymity, particularly if she is from a prominent family. The venue provisions prevent her from going to a county where she might be assured of anonymity.

In addition to these practical problems, there are other provisions of Ohio law which directly contradict the *Bellotti II* requirement of anonymity. Ohio Juv.R. 16 requires that a summons for a juvenile court proceeding "shall direct the party served to appear at a stated time and place...." Ohio Juv.R. 2(16) defines a "party" as "a child who is the subject of a juvenile court proceeding, ... his parent...." *See* Ohio Rev.Code Ann. § 2151.-28 (Page 1976) ("§ 2151.28") (requiring service of summons on a child's parents). *See also Akron*, 462 U.S. at 441 n. 31, 103 S.Ct. at 2498 n. 31 (notification under § 2151.28 of a mature minor's parents would be unconstitutional). In addition, Ohio Rev.Code Ann. § 2151.42.1 (Page Supp.1985) contains a mandatory reporting requirement for any attorney, among others, who in the course of his or her professional duties has reason to believe that a child has been abused or neglected. Such a report commences an investigation by local officials in charge of children's services. Thus, an attorney representing a minor who alleges to the court in a waiver proceeding that notification would not be in her best interest because of abuse would be statutorily obligated to report this allegation to local officials. Both statutes clearly contain requirements which abrogate the confidentiality necessary in a constitutional waiver procedure. Thus, this Court must find that the waiver procedure of H.B. 319 is constitutionally defective for failing to insure confidentiality to the minor who uses it.

## V.

The discussion in Part IV has established that there are numerous constitutional defects with the waiver procedure established in § 2151.85 and § 2505.073. To repeat: the provisions (1) establishing constructive authorization; (2) requiring the physician to perform the notice; (3) mandating that a minor prove her maturity or that notification is not in her best interests by "clear and convincing evidence"; and (4) preventing juvenile court judges from making both findings required by *Bellotti II* in all cases, are unconstitutional. In addition, the waiver procedure unconstitutionally fails to insure (5a) expedition and (5b) confidentiality.

The question of severability remains. At the outset, this Court notes that H.B. 319 does not contain a severability clause. More importantly, the legislature, rather than this Court, must repair the defects in the waiver procedure. Since the waiver procedure cannot be enforced in its present state, the notification requirements must also be enjoined to avoid violations of the constitutional rights of mature minors and minors for whom notification would not be in their best interests. *Pearson*, 716 F.2d at 1143; *Glick*, 616 F.Supp. at 327. Accordingly, H.B. 319 must be struck down in its entirety.

In sum, this Court holds that H.B. 319 violates the due process rights of minor women who are mature enough to decide to terminate a pregnancy without parental involvement, and of minors for whom notification is not in their best interests.[12] De-

12. Since the Court finds that H.B. 319 must be enjoined in full because it violates due process,

fendants Slaby and Rosen are permanently enjoined from enforcing the statute. The Court will entertain a petition for attorneys' fees from plaintiffs.

IT IS SO ORDERED.

the Court does not reach plaintiffs' equal protec- tion argument.