AMERICAN COLLEGE OF OBSTETRI-
CIANS AND GYNECOLOGISTS,
PENNSYLVANIA SECTION, et al.

v.

Richard THORNBURGH, et al.

Civ. A. No. 82–4346.

United States District Court,
E.D. Pennsylvania.

March 9, 1987.

Thomas E. Zemaitis, Kathryn Kolbert, Women's Law Project, Philadelphia, Pa., for plaintiff.

Andrew S. Gordon, Deputy Atty. Gen., Office of Atty. Gen., Harrisburg, Pa., for defendant.

## OPINION

HUYETT, District Judge.

The Pennsylvania Abortion Control Act (Act), 18 Pa.Cons.Stat. §§ 3201–3220 (1983), became law on June 11, 1982. Plaintiffs immediately filed suit challenging the constitutionality of a number of its provisions, and moved for a preliminary injunction. I granted a preliminary injunction as to section 3205 [1] and held the remainder of the Act constitutional. *American College of Obstetricians and Gynecologists v. Thornburgh*, 552 F.Supp. 791 (E.D.Pa.1982).

Cross-appeals were filed before the Third Circuit, which granted a stay of enforcement of the Act pending appeal. Following the initial briefing and argument, the Third Circuit ordered the matter held pending the Supreme Court's decisions in three cases then before it. [2] After those decisions were handed down, the court of appeals ordered additional briefing and heard reargument. *American College of Obstetricians and Gynecologists v. Thornburgh*, 737 F.2d 283, 290 (3d Cir.1984) (*American College* ). Because of the unusual posture of the case and the completeness of the record before it, the Third Circuit exercised plenary review. The court found that a number of the provisions of the statute were unconstitutional, while upholding others. *Id.* The Supreme Court affirmed. *American College of Obstetricians and Gynecologists v. Thornburgh*, — U.S. —, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986) (*Thornburgh* ).

Only one matter remains before this court. Section 3206 requires that a pregnant woman who is under eighteen years of age and is not emancipated, or who has been adjudged incompetent, obtain either parental consent [3] or judicial authorization for an abortion. The woman may elect to seek judicial authorization without notifying her parents. 18 Pa.Cons.Stat. § 3206(c). The court must authorize the abortion if it determines that the woman is mature and capable of giving informed consent to the abortion and has, in fact, given such consent. *Id.* The court must also authorize the abortion if it finds that the abortion is in the best interests of a woman who is not mature or not capable of giving informed consent. 18 Pa.Cons.Stat. § 3206(d).

Initially, I upheld section 3206, finding that it met the requirements set forth in Justice Powell's plurality opinion in *Bellotti v. Baird*, 443 U.S. 622, 99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (*Bellotti II* ). On appeal, the Third Circuit did not invalidate section 3206, but did find procedural deficiencies in the Act which must be remedied before it could constitutionally be enforced. *American College*, 737 F.2d at 297. Comparing section 3206 with the Missouri statute upheld by the Supreme Court in *Planned Parenthood Ass'n of Kansas City v. Ashcroft*, 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983), the court noted that the Pennsylvania Act lacked the "detailed provisions assuring confidentiality and dispatch, establishing a clear and simple procedure for the minor to follow in setting forth her petition, and directing court personnel to assist the minor in preparing the petition" which were present in the Missouri statute. *American College*, 737 F.2d 283, 297. The Third Circuit held that "[t]o pass constitutional muster, the alternative judicial procedure must be an established and practical avenue and may not rely solely on generally stated principles of availability, confidentiality, and form." *Id.*

---

1. Section 3205 required a twenty-four hour waiting period prior to an abortion.

2. *Akron v. Akron Center for Reproductive Health*, 462 U.S. 416, 103 S.Ct. 2481, 76 L.Ed.2d 687 (1983); *Planned Parenthood Ass'n of Kansas City v. Ashcroft*, 462 U.S. 476, 103 S.Ct. 2517, 76

L.Ed.2d 733 (1983); and *Simopoulos v. Virginia,* 462 U.S. 506, 103 S.Ct. 2532, 76 L.Ed.2d 755 (1983).

3. Or, where appropriate, the consent of her guardian.

However, section 3206 directed the Pennsylvania Supreme Court to issue "such rules as may be necessary to assure that the process provided in this section is conducted in such a manner as will ensure confidentiality and sufficient precedence over other pending matters to ensure promptness of disposition." 18 Pa.Cons. Stat. § 3206(h). Based on this provision, the Third Circuit held that the procedural inadequacies of section 3206 were not necessarily fatal to the Act. The court enjoined operation of section 3206 until such time as the Pennsylvania Supreme Court "filled the legislative gap with rules that rectify the procedural inadequacies." *American College*, 737 F.2d 283, 303. The court reserved the right of the plaintiffs to challenge the constitutionality of those rules. *Id.* at 297.

The Pennsylvania Supreme Court has now promulgated rules governing proceedings pursuant to section 3206. Orphan's Court Rules 16.1–16.8, *reprinted in* 20 Pa. Cons.Stat. following § 794 (Supp.1986). Defendants seek to vacate the injunction against the enforcement of section 3206.[4] Plaintiffs oppose enforcement of section 3206, arguing that the rules are unconstitutional in a number of respects. Plaintiffs ask this court to continue the injunction until such time as the Pennsylvania Supreme Court corrects the alleged defects in the rules.[5] I will address plaintiffs' specific challenges to the rules *seriatim.*

I note at the outset that, whatever their shortcomings, it appears clear that the provisions of rule 16 represent a good faith effort by the Commonwealth to comply with the standards articulated in the plurality opinion in *Bellotti II* and other Supreme Court cases. However, the issue before me is whether the rules sufficiently ensure "confidentiality and dispatch" and establish a sufficiently "clear and simple procedure" to allow them to pass constitutional muster. I note further that the issue is not whether this court believes that the Commonwealth has chosen the best alternative before it, but whether the alternative chosen is constitutionally permissible. The fact that I feel another course would have been more prudent does not render a rule unconstitutional.

## RULE 16.4

Rule 16.4 provides that:

All proceedings conducted in accordance with these rules and pursuant to 18 Pa. C.S. § 3206 shall be confidential.... All persons shall be excluded from the hearings except the applicant, *her parent or persons standing in loco parentis,* and such other persons whose presence is specifically requested by the applicant or her guardian.

(emphasis added).

Plaintiffs interpret this provision as giving the parents an absolute right to attend the hearing. They argue that such an absolute right is unconstitutional because the mere presence of the parents in the courtroom may interfere with the mature minor's right to make an independent decision. Plaintiffs would have no objection to the rule if the emphasized portion were deleted.

I agree with the plaintiffs that, in some cases, the minor[6] will be sensitive to the presence of her parents in the courtroom. However, the question is not whether there will be some influence exerted on the minor, but whether the parents' presence in the courtroom will have a legally signifi-

---

**4.** On February 22, 1985, I denied defendants' motion to lift the injunction against enforcement of section 3206 because I found that I lacked jurisdiction over the matter during the pendency of the appeal to the Supreme Court. The Supreme Court later determined that the constitutionality of these rules should be considered by the District Court in the first instance. *Thornburgh,* 106 S.Ct. at 2177, n. 9. The parties have now filed memoranda of law in support of their respective positions on this issue.

**5.** In their memorandum of law, plaintiffs asked that section 3206 be permanently enjoined. However, they modified this position at oral argument.

**6.** For the sake of simplicity, I will refer to the pregnant woman as 'the minor.' Unless otherwise noted or clear from the context, that term is used to apply as well to a pregnant woman who is incompetent.

cant impact on the minor's abortion decision. *American College,* 737 F.2d 283, 302.

The statute clearly provides that the minor may seek judicial authorization without any prior parental notification. Thus, we are concerned here only with parents who have learned of the judicial process from the minor herself, or through some independent source. By definition, the parents or guardian of an unemancipated minor have access to her outside the courtroom. If the parents have learned of the minor's decision to seek an abortion, and wish to interfere with that decision, it must be assumed that they will attempt to do so outside the judicial proceeding. The state cannot prevent the parents from attempting to influence the minor's decision outside the judicial proceeding. There is no reason to think that the additional pressure exerted by the parents' mere presence in the courtroom will deter the minor from seeking judicial authorization for an abortion.

In his plurality opinion in *Bellotti II,* Justice Powell recognized the important state interest in encouraging a family rather than a judicial resolution of a minor's abortion decision, and the parents' natural interest in the welfare of their children. The plurality held that parental *consultation* may be required where such consultation would be in the best interests of an immature minor. *Id.* at 648, 99 S.Ct. at 3050 (emphasis added). However, "this is the full extent to which parental involvement may be required." *Id.*

Rule 16.4 merely permits parents who have already learned of the judicial proceeding to observe that proceeding. This is not inconsistent with *Bellotti II.* Justice Powell's holding that no further parental involvement could be required was made in the context of a notification requirement. Observation is not synonymous with consultation.[7] To allow concerned parents to observe judicial proceedings, without giving them an absolute right to further participation in those proceedings, falls far short of requiring a minor to notify her parents of the proceedings.

Because the parents have access to the child outside the courtroom, and in recognition of the importance of the parents' role in raising the adolescent and their interest in her welfare, I do not believe that granting the parents an absolute right to observe the judicial proceeding can be said to unconstitutionally interfere with the child's right to obtain an abortion.

Moreover, I note that Rule 16.4 is susceptible to a more narrow interpretation than the reading given it by the plaintiffs. Rule 16.4 is directed toward preserving the confidentiality of the proceedings. The Commonwealth's position is that Rule 16.4 merely exempts the parents from the blanket prohibition against members of the public observing the proceedings. Under this interpretation, the trial judge would still be able to exclude the parents if he determines that their exclusion is in the best interests of the child or is required by the relevant case law.

The Missouri statute upheld in *Ashcroft* did not contain a requirement that parents be absolutely excluded from the judicial proceedings. Mo.Ann.Stat. § 188.028 (Supp.1987). I conclude that a rule which neither absolutely excludes parents from the proceedings nor gives them an absolute right to attend does not infringe the constitutional rights of the minor.

Where a rule is readily susceptible of two or more interpretations, at least one of which is constitutional, I must construe the rule in such a manner as to render it constitutional. *American College,* 737 F.2d 283, 300. I hold that a rule which does not require parental notification, but grants the parents of a minor an absolute right to observe the hearing if they learn of the judicial proceedings, is constitutional. In the alternative, I hold that rule 16.4 can be construed as simply exempting parents of the minor from its blanket prohibition against public observation of the hearing, leaving the trial judge the power to exclude the parents in an

---

7. Rule 16.4 gives the parents the right to be in the courtroom. Nothing in the rule can be construed to give them a right to actively participate in the proceedings.

appropriate case, and that such a rule is constitutionally permissible.

## RULE 16.3 [8]

Rule 16.3 concerns representation of the pregnant woman in the judicial proceedings, and provides:

The pregnant minor woman may participate in the court proceedings on her own behalf, and the court may appoint a guardian ad litem for her.

The court shall advise the pregnant minor woman that she has a right to court-appointed counsel and shall, upon her request, provide her with such counsel.

The court also shall advise her that she has a right to retain private counsel at her own expense.

The plaintiffs' challenge to rule 16.3 is two-fold. They argue, first, that the rule is unconstitutional because it fails to mandate the appointment of counsel in all cases. In addition, they argue that the rule is unconstitutional because it fails to provide guidance to the court as to the appropriate circumstances for the appointment of a guardian ad litem or the role of the guardian once appointed.

### 1. *Appointment of Counsel.*

While I agree with plaintiffs that the Commonwealth might have made a more prudent choice by requiring the appointment of counsel in every case, I cannot say that the alternative selected by the Commonwealth is unconstitutional. Rule 16.3 requires the court to inform the minor of her right to court-appointed counsel, but does not require the appointment of counsel unless requested by the minor. Plain-

tiffs argue that the immature minor is not capable of understanding the importance of legal representation, and therefore the state should not impose upon her the affirmative burden of requesting counsel. Plaintiffs would require the court to appoint counsel for all minors, at least until such time as the court determines that the minor is sufficiently mature to make an intelligent waiver of counsel.

The mere fact that the Pennsylvania legislature has mandated the appointment of counsel for minors in other situations [9] does not render the failure to do so here a constitutional violation. The Missouri statute upheld in *Ashcroft* reflected the judgment of that state's legislature that counsel should be appointed in all cases. Mo. Ann.Stat. § 188.028(2)(1). However, that legislative judgment does not establish a constitutional requirement that counsel be appointed in all cases. A legislative choice may be constitutional without being constitutionally required.

The District Court of Minnesota recently upheld a statute which neither required the appointment of counsel nor required the court to advise the minor of her right to request counsel. *Hodgson v. State of Minnesota,* 648 F.Supp. 756 (D.Minn.1986), *cert. denied,* Feb. 23, 1987 (86–288). The court noted that the courts "regularly notified" the minor of the right to counsel, and appointed counsel where requested. *Id.* at 762. Thus, in application, the Minnesota statute was identical to rule 16.3 and section 3206(e).

Plaintiffs have pointed to nothing in *Bellotti II* which requires the appointment of counsel where counsel is not requested by the minor. They have not cited, and I have been unable to find, any authority for the

---

**8.** Rule 16.3 is substantially identical to section 3206(e) of the statute. The Third Circuit recognized "procedural inadequacies" in section 3206, relating to the provisions for confidentiality and promptness of the judicial proceedings. *American College,* 737 F.2d 283, 297, 303. The court of appeals did not, however, hold unconstitutional any provisions already contained in the statute.

I have requested and received additional briefing from the parties on the question of whether the Third Circuit's decision in this case

precludes further review of rule 16.3. The Commonwealth has stated its belief that the validity of rule 16.3 is properly before this court. Upon reflection, and because the Third Circuit has not specifically considered the constitutionality of section 3206(e), I agree with the parties that this is an appropriate matter for my consideration. *See Riley v. MEBA Pension Trust,* 586 F.2d 968 (2d Cir.1978).

**9.** *See, e.g.,* 42 Pa.Cons.Stat. § 6337; 50 Pa.Stat. § 7206, 7303; 23 Pa.Cons.Stat. § 2313.

proposition that a judicial bypass procedure must do more than advise the minor of her right to counsel and to appoint counsel whenever the minor so requests.[10]

 I anticipate that the trial courts will go beyond the mandate of section 3206(e) and rule 16.3 and enter into a colloquy with the minor to assure themselves that the minor understands the importance of counsel and to determine whether the minor desires counsel or has made a knowing and intelligent waiver of her right to court-appointed counsel. But the Commonwealth's failure to *require* the court to do so, or to compel the minor to accept counsel, does not deprive the minor of an effective opportunity to obtain an abortion. *Planned Parenthood Ass'n v. Ashcroft,* 462 U.S. 476, 491 n. 16, 103 S.Ct. 2517, 2525, 76 L.Ed.2d 733; *Bellotti II,* 443 U.S. 622, 644, 99 S.Ct. 3035, 3048.

### 2. *Appointment of Guardian ad Litem.*

Plaintiffs also argue that rule 16.3 does not provide the court with sufficient guidelines as to the appropriate circumstances for the appointment of a guardian ad litem, or as to the role of the guardian in the proceedings. They argue that the rule thereby creates a risk that a guardian will be appointed for a mature minor. They further argue that the traditional role of the guardian is to substitute his judgment for that of the minor. Therefore, they argue, the appointment of a guardian ad litem for a mature minor or for an immature minor whose best interests require an abortion may unconstitutionally usurp the minor's rights to an abortion.

The Commonwealth agrees that if section 3206 and rule 16.3 permitted the guardian to substitute his judgment for that of the mature minor the statutory scheme might well be unconstitutional.

However, the fallacy of the plaintiffs' argument lies in the assumption that the guardian's role is to substitute his judgment for that of the minor. Section 3206(e) and rule 16.3 do not contradict, and indeed implement, the holding of *Bellotti II* that a mature minor must be permitted to make the abortion decision without interference. The rule is easily susceptible of an interpretation consistent with *Bellotti II.*

"A guardian ad litem is a special guardian appointed by the court to prosecute or defend, in behalf of an infant or incompetent, a suit to which he is a party, and such guardian is considered an officer of the court to represent the interests of the infant or incompetent in the litigation." Black's Law Dictionary 635 (5th ed. 1979). The guardian ad litem's role is to supervise and control the conduct of the action in behalf of the minor or incompetent. Pa.R. Civ.P. 2027, 2053. "A guardian ad litem has authority to protect the interest of his ward, but never has authority to consent to anything prejudicial to his ward." *Piperberg Estate,* 87 D. & C. 26, 31; *Gingrich Estate,* 57 Dauph. 102, 104 (1945). "It [is] his duty, as an appointee of this court representing persons who cannot speak for themselves because of disability, to defend vigorously every legal right which they [possess]. He has no authority to surrender without consideration any right or property which is theirs." *Mark's Estate,* 38 D. & C. 489, 492 (1940).

The same principles apply where the guardian is defending not the property, but the constitutional rights of the minor. The guardian's duty to vigorously defend all of the minor's legal rights includes her right to obtain an abortion. The guardian may do nothing which in any way infringes that right.

**10.** The seventh circuit cases cited by the plaintiffs are not directly on point. In *Indiana Planned Parenthood v. Pearson,* the court held unconstitutional a statutory scheme which gave the trial court discretion in the appointment of counsel. The court held that the indigent minor may not be *denied* counsel at the discretion of the court. 716 F.2d 1127, 1137–39 (7th Cir. 1983). It did not address the question of whether the court must, on its own initiative, appoint counsel for the minor. In *Wynn v. Carey,* the court considered a statute which made no provision whatever for the appointment of counsel. The court found that the fact that the trial judge had discretion to appoint counsel could not save the statute. 582 F.2d 1375, 1389 & n. 8 (7th Cir.1978). Rule 16.3 and section 3206(e) do not give the court discretion in this matter; the court must notify the minor of her right to counsel, and must appoint counsel if requested.

The Pennsylvania Superior Court's opinion in *In re Terwilliger*, 304 Pa.Super. 553, 450 A.2d 1376 (1982) is worthy of notice here. The legal guardian of an incompetent woman sought a court order authorizing sterilization of the woman. The Superior Court held that the court must appoint

an independent guardian ad litem, who will vigorously defend the interests of the incompetent at a full judicial hearing ... The guardian ad litem must have full opportunity to meet with the ward, present evidence and cross-examine witnesses at the hearing. In addition, to ensure that adequate evidence will be presented, *the court* must assure itself that a comprehensive medical, psychological and social evaluation is made of the incompetent. If need be, the *trial judge* is not foreclosed from appointing its own experts to assist in the evaluation of the incompetent's best interests by examining the individual or testifying at the hearing.

(citations omitted) (emphasis added). *Id.* at 565, 450 A.2d at 1383. Thus, the court clearly separated the responsibility of the guardian to conduct the litigation and vigorously defend his ward's interests from the responsibility of the court to evaluate the best interests of the minor or incompetent.

The guardian ad litem has a duty to form an opinion and to advise the court of his opinion. However, the court must conduct a hearing, and must form its own opinion of the minor or incompetent's best interests. Moreover, in the context of a proceeding under section 3206, the guardian's duty to the court and to the minor requires that he advise the court of any difference of opinion between himself and the minor regarding her best interests. The court, and the court alone, may substitute its judgment for that of the minor.

With regard to the mature minor, the statute clearly provides that the court must, as an initial matter, determine whether the minor is mature and capable of giving informed consent. Once the court

has determined that the minor is mature and capable of giving informed consent, the court may not make further inquiry into whether an abortion is in her best interests. 18 Pa.Cons.Stat. § 3206(c). Thus, a guardian ad litem would never be called upon to advise the court regarding the best interests of a mature minor.

■ In view of the Pennsylvania law establishing the role of the guardian, and in light of the fact that nothing in rule 16.3 or section 3206(e) requires a contrary interpretation, the guardian has no power to substitute his judgment for that of the minor or of the court.

## RULES 16.7 AND 16.8

Rule 16.7 addresses the need for an expedited hearing procedure and provides that

Proceedings in accordance with these rules and pursuant to 18 Pa.C.S. § 3206 shall be given such precedence over other pending matters as to ensure that the court will reach a decision promptly and without delay but in no case shall the court fail to rule within 3 business days of the date of filing.

Rule 16.8 establishes the procedure on appeal as follows:

An expedited confidential appeal to the Superior Court shall be available to any pregnant woman whom the court denies an order authorizing an abortion. The notice of intent to appeal shall be given within forty-eight hours of the date of issuance of the order. The record on appeal shall be perfected within five business days from the filing of notice of appeal. The President Judge shall assign all appeals taken pursuant to this Rule to a special submission panel of the court for immediate disposition. In no case shall the court fail to rule on the appeal within seven business days of the completion of the record.

Plaintiffs challenge these provisions on three grounds. First, they argue that the total of twenty three days [11] is excessive.[12]

---

**11.** Seventeen business days, and at least six nonbusiness days.

**12.** Plaintiffs do not challenge the period permitted for any particular phase of the proceeding,

Second, plaintiffs argue that Orphan's Court Rule 2.2 permits the court to circumvent the limitations contained in these rules, so that even the twenty three day period is subject to extension. Finally, they argue that rule 16.8 is constitutionally deficient because it fails to provide for an appeal in a case in which the trial court fails to act within the statutory period.

### 1. *The 23 Day Period.*

The provisions of rule 16 must contain clear and simple detailed provisions to assure that each case will be disposed of promptly. *Bellotti II,* 443 U.S. 622, 644, 99 S.Ct. 3035, 3048, 61 L.Ed.2d 797; *American College,* 737 F.2d 283, 297. It is not and cannot be disputed that any delay in obtaining an abortion can have serious medical consequences for the woman. Each week of delay significantly increases the complication rate. Stipulation of Uncontested Facts, Paragraph 89. Studies show that the problem is particularly acute for pregnant minors, who are more likely to seek abortions at a later stage of gestation than are older women. Nationally, over half of the abortions obtained by adolescents are performed at 9 or more weeks of gestation. *Id.* Paragraph 157. However, it is equally clear that the state may constitutionally require that a minor obtain judicial authorization for an abortion. *Bellotti II,* 443 U.S. 622, 643, 99 S.Ct. 3035, 3048, 61 L.Ed.2d 797. While the state must expedite the proceedings, it must also allow the courts an adequate opportunity to hear and consider the case.

In *Planned Parenthood Ass'n v. Ashcroft,* 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983), the Supreme Court upheld a statute which requires:

1) That a hearing on the merits of the petition be held as soon as possible within five days of filing the petition;

2) That notice of intent to appeal shall be filed within twenty four hours from the date of issuance of an order denying or granting authorization for an abortion;

3) That the record on appeal shall be completed and the appeal perfected within five days from the filing of the notice of the appeal; and

4) Recognizing that time may be of the essence, that the Missouri Supreme Court shall promulgate rules providing for an expedited appeal. Mo.Ann.Stat. § 188.-028(3), (6).

The provisions of rules 16.7 and 16.8 are similar but not identical to those in the Missouri statute. In Pennsylvania, the Orphan's Court must issue a ruling on the petition within three business days of filing; in Missouri, the court is merely required to hold a hearing within "five days." Pennsylvania permits two days for the filing of appeal; Missouri permits one. Both states require that the record on appeal shall be perfected within five days. Pennsylvania requires that the appeal be expedited, but in no event shall the appellate court fail to rule within seven business days; Missouri merely requires that the appeal be expedited. Thus, the Pennsylvania rule differs from the Missouri statute in one important respect: the seven day limit on the appeal.

At first blush, Pennsylvania would appear to impose a stricter requirement upon the courts than does the Missouri statute. However, unlike the Supreme Court, I am confronted with a complete statutory scheme which expressly permits the judicial proceedings to take up to 23 days. This is an important difference. *See Akron Center for Reproductive Health v. Rosen,* 633 F.Supp. 1123, 1142 (N.D.Ohio 1986). I must determine whether such a 23 day delay in the minor's ability to obtain an abortion is constitutional.

■ I have carefully considered the needs of judicial administration. I note in particular that rule 16.8 provides that the appeal shall be heard by a panel of the Superior Court, and I recognize that it may take time to convene the panel. But these administrative problems cannot outweigh

but argue that the cumulative period of twenty three days unduly burdens the woman's right to

obtain an abortion.

the vital interest of the woman in obtaining an abortion at the earliest possible time. A minor or incompetent who does not seek an abortion until the ninth week of gestation and who is then forced to pursue an appeal may well be pushed into the second trimester of her pregnancy, greatly increasing the risks of an abortion. *Id.* at 1142–43. *See Glick v. McKay,* 616 F.Supp. 322, 326 (D.Nev.1985). I therefore hold that a statutory scheme which allows 23 days for the judicial proceedings is unconstitutional.

It is for the Commonwealth to determine how best to shorten the time frame for the judicial bypass proceeding. I emphasize that I do not hold the time allotted to any one step in the process unconstitutionally long. However, taken in the aggregate a 23 day delay unduly infringes on the minor's right to obtain an abortion.

### 2. *Orphan's Court Rule 2.2.*

I find plaintiffs' argument that Orphan's Court rule 2.2 renders rules 16.7 and 16.8 unconstitutional to be without merit. Rule 2.2 permits the court, upon its own motion, to extend any limitation of time prescribed by the Orphan's Court rules.[13] Plaintiffs argue, in effect, that this provision reduces the mandates of rule 16.7 and 16.8 to guidelines to be circumvented by the courts.

As to the limitation on the trial court proceeding, I note that the three day period is established as a statutory requirement in section 3206. 18 Pa.Cons.Stat. § 3206(f). Rule 2.2 cannot be read as authorizing the court to extend this statutory time period. Clearly, the Pennsylvania Supreme Court did not intend rule 2.2 to be applied to rule 16.7.

It is equally clear from the language of the statute that the Pennsylvania Supreme Court did not intend rule 2.2 to apply to Rule 16.8. Rule 16.8 provides that *in no case* shall the court fail to rule within seven business days. It requires that the case shall be assigned to a special panel for *immediate disposition.* This strong language makes clear the court's intention that these rules are absolute mandates, and that no exception to their provisions shall be made. To apply rule 2.2 to the time periods in rule 16.8 would be completely inconsistent with the language in the later rule.[14]

■ Here, a constitutional interpretation is not only possible, but clearly required by the language of the rule. I conclude that neither rule 16.7 or 16.8 is subject to the application of rule 2.2.

### 3. *Failure of the Trial Court to Act.*

Plaintiffs' argument that rule 16.8 is unconstitutional because it fails to provide for an appeal where the trial court fails to take action on a petition within three business days has merit. Rule 16.8 provides for an appeal by "any pregnant woman whom the court *denies an order* authorizing the abortion." (emphasis added). Defense amici interpret this language as including the situation in which the court's failure to act operates to deny the woman the order she seeks, as well as the situation where the court issues an order denying authorization for the abortion.[15]

Amici's interpretation is attractive, but is contradicted by additional language in the rule providing that the notice of intent to appeal shall be given within forty-eight hours of the *date of issuance of the order.* This provision would have no meaning unless the right to appeal was created only by the issuance of an order denying authorization.

Nor is the possibility that the trial court will fail to act within the three day period an unrealistic one. It is easily foreseeable that the courts, despite all their best ef-

---

**13.** Rule of Appellate Procedure 105(b) permits an appellate court, for good cause and upon application, to extend the time period prescribed by the Rules of Appellate Procedure.

**14.** It appears probable that in promulgating rule 16, the Supreme Court did not consider the possible effect of rule 2.2. It would, of course,

be helpful to the lower courts if the rule were clarified in this regard.

**15.** Amici distinguish the phrase "denies an order authorizing the abortion" from the phrase "issues an order denying the abortion."

forts, may be unable to hear the case and issue a decision within three days.

The Commonwealth argues that the mandamus remedy is sufficient to meet this possibility. However, this would merely prolong the twenty three day period, and would not provide for the prompt disposition of the woman's petition. For the reasons already stated, that possibility is constitutionally impermissible.

■ It is clear from the other language in the rule, making every provision for an expedited appeal, that the failure to provide for an expedited appeal in those instances in which the trial court is unable to dispose the case within the three day period established by the rule was merely an oversight. However, there remains in the rule a substantial gap which must be remedied before the injunction against the operation of section 3206 may be lifted.

## RULE 16.2

Rule 16.2 sets forth the requirements pertaining to the minor's petition for judicial authorization of an abortion:

(a) The petition shall be verified by way of a notarized affidavit stating that the information therein is true and correct to the best of the minor's knowledge, and the petition shall set forth the following facts:

(1) the initials of the minor;

. . . .

(7) the signature of the minor.

(b) Where necessary to serve the interest of justice, the Orphans' Court Division, or in Philadelphia the Family Court Division, shall refer the minor to the appropriate personnel for assistance in preparing the petition.

The judicial bypass procedure established by the state must preserve the woman's anonymity in order to protect her from public scrutiny. *Thornburgh,* 106 S.Ct. at 2181–82. "A woman ... will necessarily be more reluctant if there exists a *possibility* that her decision and her identity will become known publicly." *Id.* at 2182 (emphasis added).

Plaintiffs have acknowledged that the provisions of rule 16 adequately protect the anonymity of the minor in all respects save one. Plaintiffs challenge the requirement of rule 16.2 that the minor's petition be "verified by notarized affidavit." The plaintiffs' concern is that the notary's log, which is by law open to public inspection,[16] would contain the name of the minor. Plaintiffs argue that, in small communities, anti-abortion groups could obtain these logs and, through them, learn the identity of minors seeking abortions.

The rule must be held unconstitutional if records are made available for public copying from which the identity of the woman can be deduced. *Thornburgh,* 106 S.Ct. 2169, 2181–82. Therefore, if the plaintiffs are correct that the minors name must appear in a notary's log, the rule does not adequately protect the woman's anonymity.

The Commonwealth and defense amici argue that the requirement that the petition be verified by a "notarized affidavit" was not intended to require notarization at all. They point to the definitions of 'affidavit' and 'verified' in Pennsylvania Rule of Civil Procedure 76, which permit verification by an unsworn affidavit made subject to the penalties of perjury. The defendants' argument has no merit in the face of the clear language of rule 16.2, which specifically requires a *notarized affidavit.* The plain language of the rule is not susceptible to the interpretation put forth by the defendants.[17]

---

16. "Every notary public shall keep an accurate register of all official acts by him done by virtue of his office, and shall, when thereunto required, give a certified copy of any record in his office to any person applying for same. Said register shall contain the date of the act, the character of the act, and the date and parties to the instrument, and the amount of fee collected for the service." 57 Pa.Stat. § 161(a).

17. While defendants are undoubtedly correct that this language was an oversight, and that the Commonwealth did not intend to require notarization of the affidavit, the rules must provide a clear and simple procedure for the minor to follow. *American College,* 737 F.2d 283, 297. Since the court cannot appoint counsel for the minor until her petition has been filed, it must be anticipated that the minor will be unrepresented at this stage of the proceedings. In the

Defense amici further argue that the minor's name need not appear at any place on the petition, or in the notary's log. I agree that, as a matter of law, a person may adopt as her signature anything which she cares to identify as such, so long as there is an intent that it be her signature. *Commonwealth of Pennsylvania v. Ballard,* 17 Pa.Commw. 310, 314, 331 A.2d 578, 580 (1975). That this principle should be applied to the petition for judicial authorization of an abortion was clearly the intent of the Supreme Court. Any other interpretation of the rule would make ludicrous the provision that the petition need only contain the minor's initials.

However, the minor cannot be expected to know the intricacies of the law. Rule 16.2 provides that court personnel refer the minor to the appropriate personnel for assistance in completing the petition, but there is no guarantee that the minor will be advised that she need not sign her name to the petition.

■ This defect may be easily remedied.[18] However, absent some provision to make clear that the petition need not reveal the minor's name, or that the petitioner need not be notarized, the injunction against the enforcement of section 3206 must be continued.

## RULES INAPPLICABLE TO INCOMPETENTS

■ Section 3206 requires the consent of a guardian or judicial authorization before an abortion may be performed on an incompetent. 18 Pa.Cons.Stat. § 3206(a). Rule 16, by its clear terms, governs only the right of a *minor* to petition the court for consent. Orphan's Court Rule 16, introductory sentence. No separate procedures have been established governing the right

of an incompetent to petition the court for consent.

Therefore, the injunction against the enforcement of section 3206 as applied to the incompetent must be continued until this defect in the rules is remedied.[19]

## CHESTER COUNTY RULES

The plaintiffs also ask me to invalidate local orphan's court rules promulgated by the Court of Chester County. Those rules are not the subject of this lawsuit and are not properly before this court. I therefore decline to take any action with regard to these rules.

## CONCLUSION

The provisions of Orphan's Court Rules 16.1–16.8 do not adequately assure the confidentiality and expedition of the judicial bypass procedure. Therefore, the injunction against the enforcement of 18 Pa. Cons.Stat. § 3206 must be continued. An appropriate order is attached.

## ORDER

Upon consideration of the plaintiffs' memorandum of law in opposition to enforcement of section 3206 of the Pennsylvania Abortion Control Act, the defendants' memorandum of law in support of enforcement of section 3206, the briefs of amicus Juvenile Law Clinic and amici John Lane, M.D., *et al.*, the comments of counsel at oral argument, and for the reasons stated in the attached opinion, IT IS ORDERED that the defendants' motion to lift the injunction against enforcement of section 3206, initially filed in 1984, is DENIED.

IT IS SO ORDERED.

face of the clear language of the rule, the minor cannot be expected to know that her unnotarized affidavit will be accepted by the court.

**18.** For example, it may be sufficient for the court to provide for the use of a form which clearly states that the woman's name need not appear on the petition.

**19.** The Commonwealth argues that the title of the statute and certain references to "the pregnant woman" are enough to allow the rule to be interpreted as applying to incompetents as well as minors. In view of the clear language of the introductory sentence of the rule, I find the Commonwealth's argument to be entirely without merit.