**JACKSONVILLE CLERGY CONSULTATION SERVICE, INC. d/b/a Max Suter Women's Center for Reproductive Health, Jeffrey M. Stowe, M.D., Ralph Bundy, M.D., and Randall Whitney, M.D., Plaintiffs,**

v.

**Bob MARTINEZ, Governor of the State of Florida, in his official capacity; Robert Butterworth, Attorney General of the State of Florida, in his official capacity; and T. Edward Austin, State Attorney for the Fourth Judicial Circuit of Florida, in his official capacity, Defendants.**

No. 88–809–Civ–J–16

United States District Court,
M.D. Florida,
Jacksonville Division.

Oct. 6, 1988.

William J. Sheppard, Elizabeth L. White, Jacksonville, Fla., for plaintiffs.

George Lee Waas, Asst. Atty. Gen., Tallahassee, Fla., for defendants.

## ORDER

JOHN H. MOORE, II, District Judge.

This case is before the Court on the plaintiffs' motion for a temporary restraining order and preliminary injunction. At issue is the constitutionality of Florida Statute § 390.001(4) as amended by the Florida legislature on 15 June, 1988, and which went into effect on 1 October, 1988. The statute regulates an unmarried minor's constitutional right to seek an abortion. The amended statute provides:

**390.001. Termination of pregnancies**

(4) **CONSENTS REQUIRED.**—Prior to terminating a pregnancy, the physician shall obtain the written informed consent of the pregnant woman or, in the case of a mental incompetent, the written consent of her court-appointed guardian.

(a) 1. If the pregnant woman is under 18 years of age and unmarried, in addition to her written request, the physician shall obtain the written informed consent of a parent, custodian, or legal guardian of such unmarried minor, or the physician may rely on an order of the circuit court, on petition of the pregnant unmarried minor or another person on her behalf, authorizing, for good cause shown, such termination of pregnancy without the written consent of her parent, custodian, or legal guardian. The cause may be based on a showing that the minor is sufficiently mature to given an informed consent to the procedure, or based on the fact that a parent, custodian or legal guardian unreasonably withheld consent, or based on the minor's fear of physical or emotional abuse if her parent, custodian, or legal guardian were requested to consent, or based upon any other good cause shown. At its discretion, the court may enter its order ex parte. If the court determines that the minor is sufficiently mature to give an informed consent to the procedure, the court shall issue an order authorizing the procedure without the consent of her parent, custodian, or legal guardian. If the court determines that the minor is not sufficiently mature, the court shall determine the best interest of the minor and enter its order in accordance with such determination.

2. The court shall ensure that a minor who files a petition pursuant to this paragraph will remain anonymous. The minor may participate in proceedings in the court on her own or through another person on her behalf. Court proceedings brought pursuant to this paragraph are confidential and shall be given the priority necessary for the court to reach a decision promptly. The court shall rule within 48 hours after the petition is filed; but the 48 hour limitation may be extended at the request of the minor. An expedited anonymous appeal shall be made available to a minor who files a petition pursuant to this paragraph.

3. The Supreme Court may promulgate any rules it considers necessary to ensure that proceedings brought pursuant to this paragraph are handled expeditiously and are kept confidential.

Section 7. If any provision of this act or the application thereof to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared severable.

Section 8. This act shall take effect Oc-

tober 1, 1988.[1]

In order for this Court to grant the relief sought, plaintiffs must establish four things. Those prerequisites are: (1) a substantial likelihood that plaintiffs will prevail on the merits, (2) a substantial threat that irreparable injury will result to plaintiffs if an injunction does not issue, (3) the threatened injury to plaintiffs outweighs any harm that might result to defendants, and (4) that the public interest will not be disserved. *Canal Authority of State of Florida v. Callaway*, 489 F.2d 567, 572 (5th Cir.1974). In applying these four factors, the Court must always be mindful that a preliminary injunction is an extraordinary and drastic remedy. Only those injuries that cannot be redressed after a full hearing on the merits will warrant the issuance of a preliminary injunction.

Plaintiffs attack the constitutionality of the statute on several grounds. They argue, *inter alia*, that the judicial authorization procedure provided for in the statute as an alternative to parental consent is constitutionally insufficient. In legal parlance such a procedure is referred to as a judicial bypass procedure. More specifically, plaintiffs maintain the statute unduly burdens a minor's right to an abortion by failing to adequately prescribe procedures for ensuring the confidentiality and anonymity of minors, and that it fails to establish sufficient guidelines for an expeditious appeal of a circuit court decision. Since the Court finds that there is a substantial likelihood of success on the merits of these arguments, it is unnecessary to discuss the other grounds of attack.

This is not the first time that the Florida abortion law has been challenged as unconstitutional. *Scheinberg v. Smith*, 659 F.2d 476 (5th Cir. Unit B, 1981). In *Scheinberg*, the Court considered the predecessor of the statute attacked in this case. The Court affirmed a lower court decision that the statute was unconstitutional because the judicial bypass procedure was inadequate in light of *Bellotti v. Baird*, 443 U.S. 622,

99 S.Ct. 3035, 61 L.Ed.2d 797 (1979) (Bellotti II). The Florida legislature, in amending the statute, has apparently attempted to bring the law in line with the constitutional standards enunciated in *Bellotti II* and its progeny. The question before this Court is whether the Florida legislature succeeded.

The Supreme Court has recognized that a woman has a constitutional right to seek an abortion. *Roe v. Wade*, 410 U.S. 113, 93 S.Ct. 705, 35 L.Ed.2d 147 (1973). The right is not absolute. The state may regulate a woman's exercise of the right to a limited extent. The Court has acknowledged, however, that the State has greater authority in regulating the activities of minors than of adults. *Planned Parenthood of Cent. Mo. v. Danforth*, 428 U.S. 52, 96 S.Ct. 2831, 49 L.Ed.2d 788 (1976). Thus, a state may restrict a minor's right to an abortion if the restriction furthers a significant state interest. In *Danforth*, the Court struck down a Missouri statute requiring parental consent before an abortion could be obtained by any unmarried minor, unless the operation was medically necessary to preserve the mother's life. The Court held that the State did not have the power to grant a third party such an absolute veto over the exercise of the constitutional right. *Id.* at 75, 96 S.Ct. at 2844.

The Court's next significant step came in *Bellotti II*. The Court had before it a Massachusetts statute requiring parental consent before a minor could obtain an abortion. The statute also provided that a minor could petition a court for an abortion if the parents withheld consent. The Court's plurality opinion concluded that where the state requires a minor to obtain parental consent for an abortion, it must also provide for an alternative authorization procedure. The Court wrote that "[t]he proceeding ... must assure that a resolution of the issue, and any appeals that may follow, will be completed with anonymity and sufficient expedition to provide an effective opportunity for an abortion to be obtained." 443 U.S. at 644, 99

---

**1.** A copy of the amended law as it appears in West's Florida Session Law Service, No. 4 (1988) is attached hereto as Appendix 1.

S.Ct. at 3048. Although *Bellotti II* was a plurality opinion, it has become the standard by which parental intervention statutes are evaluated. *Planned Parenthood Association of Kansas City v. Ashcroft,* 462 U.S. 476, 103 S.Ct. 2517, 76 L.Ed.2d 733 (1983).

With these general principles in mind, the Court now turns to consider whether the plaintiffs' argument that Florida's judicial bypass procedure is constitutionally deficient is substantially likely to succeed on the merits. The Florida statute provides that the circuit court shall ensure that a minor filing a petition for judicial authorization of an abortion will remain anonymous. The statute also provides that the proceedings will be confidential. In addition, the statute allows that the Florida Supreme Court *may* promulgate any rules it considers necessary to ensure that proceedings are handled expeditiously and to keep such proceedings confidential. To date, the Florida high court has yet to promulgate any such rules.

The statute does require that the circuit court shall rule on a petition within 48 hours after the petition is filed. However, no provision is made for what happens in the event a circuit court fails to comply with this mandate. Also, the statute provides that an expedited anonymous appeal shall be made available and that the Florida Supreme Court may promulgate rules to ensure the expeditiousness of such a procedure. Again, however, the Florida Court has not yet acted.

When measured against Supreme Court precedent, these general pronouncements regarding the confidentiality of proceedings, the anonymity of the petitioner, and the expeditiousness of judicial bypass proceedings fall woefully short of constitutional requirements. The generality of these statutory provisions is in stark contrast to the detailed and specific Missouri statute upheld in *Ashcroft. See also Akron Center for Reproductive Health v. Slaby,* 854 F.2d 852 (6th Cir.1988); *Zbaraz v. Hartigan,* 763 F.2d 1532 (7th Cir.1985), *aff'd —* U.S. ——, 108 S.Ct. 479, 98 L.Ed.2d 478 (1987); *American College of Obstetricians and Gynecologists v. Thornburgh,* 737 F.2d 283 (3rd Cir.1984), *aff'd on other grounds,* 476 U.S. 747, 106 S.Ct. 2169, 90 L.Ed.2d 779 (1986) ("alternative judicial procedure must be an established and practical avenue and may not rely solely on generally stated principles of availability, confidentiality, and form." 737 F.2d at 297.); *Planned Parenthood Ass'n of Atlanta v. Harris,* 670 F.Supp. 971 (N.D.Ga. 1987); *American College of Obstetricians and Gynecologists v. Thornburgh,* 656 F.Supp. 879 (E.D.Pa.1987). The common thread running through all of these cases is that in order for a statute to pass constitutional muster the provisions ensuring confidentiality, anonymity and expeditious judicial proceedings must be drafted with specificity and detail. Although these constitutional deficiencies might possibly be cured by the Florida Supreme Court, that court has yet to act.

*Preliminary Injunction*

The Court has determined that plaintiffs have demonstrated a substantial likelihood of success on the merits. The Court also determines that unless a preliminary injunction issues, irreparable harm will result to plaintiffs and those whose interests they assert because of the chill that will result on the exercise of constitutional rights. In addition, because of the unique nature of the abortion decision, and the fact that time is of the essence in making such a decision, the Court finds irreparable harm would result absent a preliminary injunction. No harm will result to the defendants if such an injunction issues. Finally, the public will not be harmed by the issuance of such an injunction. In fact, a preliminary injunction would be in the best interests of the public because it will remove a significant impediment from the exercise of constitutional rights. Therefore, the Court finds that the prerequisites for issuing a preliminary injunction are present in this case.

Accordingly, it is now

ORDERED AND ADJUDGED:

That the plaintiffs' motion for a preliminary injunction is GRANTED. The defend-

ants, the HONORABLE BOB MARTINEZ, Governor of the State of Florida, the HONORABLE ROBERT BUTTERWORTH, Attorney General of the State of Florida, and the HONORABLE T. EDWARD AUSTIN, State Attorney for the Fourth Judicial Circuit of Florida, and any of their agents, employees, or anyone under their direction, are hereby ENJOINED from enforcing the provisions of Florida Statutes § 390.001(4) (1988), as such provisions relate to minors, unless and until the Florida Supreme Court promulgates any rules it considers necessary relating to the confidentiality of proceedings, anonymity of petitioners and expeditiousness of judicial proceedings, AND until further order of this Court.

APPENDIX 1

Section 5.   Subsection (2) of section 390.011, Florida Statutes, and sections 390.012, 390.013, 390.014, 390.015, 390.016, 390.017, 390.018, 390.019, and 390.021, Florida Statutes, are repealed on October 1, 1998, and shall be reviewed by the Legislature pursuant to·s. 11.61, Florida Statutes.

Section 6.   Paragraph (a) of subsection (4) and subsection (6) of section 390.001, Florida Statutes, are amended, and paragraph (c) is added to subsection (10) of said section, to read:

**390.001.   Termination of pregnancies**

(4) CONSENTS REQUIRED.—Prior to terminating a pregnancy, the physician shall obtain the written informed consent of the pregnant woman or, in the case of a mental incompetent, the written consent of her court-appointed guardian.

(a)1.   If the pregnant woman is under 18 years of age and unmarried, in addition to her written request, the physician shall obtain the written informed consent of a parent, custodian, or legal guardian of such unmarried minor, or the physician may rely on an order of the circuit court, on petition of the pregnant unmarried minor or another person on her behalf, authorizing, for good cause shown, such termination of pregnancy without the written consent of her parent, custodian, or legal guardian.   The cause may be based on a showing that the minor is sufficiently mature to give an informed consent to the procedure, or based on the fact that a parent, custodian, or legal guardian unreasonably withheld consent ~~by her parent, custodian, or legal guardian~~, or based on the minor's fear of physical or emotional abuse if her parent, custodian, or legal guardian were requested to consent, or based upon any other good cause shown.   At its discretion, the court may enter its order ex parte.   If the court determines that the minor is sufficiently mature to give an informed consent to the procedure, the court shall issue an order authorizing the procedure without the consent of her parent, custodian, or legal guardian.   If the court determines that the minor is not sufficiently mature, the court shall determine the best interest of the minor and enter its order in accordance with such determination.

2.   The court shall ensure that a minor who files a petition pursuant to this paragraph will remain anonymous.   The minor may participate in proceedings in the court on her own or through another person on her behalf.   Court proceedings brought pursuant to this paragraph are confidential and shall be given the priority necessary for the court to reach a decision promptly.   The court shall rule within 48 hours after the petition is filed, but the 48 hour limitation may be extended at the request of the minor.   An expedited anonymous appeal shall be made available to a minor who files a petition pursuant to this paragraph.

3.   The Supreme Court may promulgate any rules it considers necessary to ensure that proceedings brought pursuant to this paragraph are handled expeditiously and are kept confidential.

Section 7.   If any provision of this act or the application thereof to any person or circumstance is held invalid, the invalidity shall not affect other provisions or applications of the act which can be given effect without the invalid provision or application, and to this end the provisions of this act are declared severable.

Section 8.   This act shall take effect October 1, 1988.

Approved by the Governor June 15, 1988.
Filed in Office Secretary of State June 15, 1988.